Richard Aronson, J.
In an action brought by the plaintiff individually and on behalf of all members of the defendant corporation similarly situated to permanently enjoin the defendant from making certain deductions from their milk checks and also to require the defendant to reimburse them for previous deductions, the defendant has moved for summafy judgment pursuant to CPLR 3212.
There is little dispute about the facts. The plaintiff is a member of the defendant corporation which is an agricultural corporation organized pursuant to the Cooperative Corporations Law of the State of New York. Said corporation is a *139 member of the Northeast Dairy Cooperative Federation, Inc., hereinafter called “Northeast”, a federation of co-operatives which was created under the Cooperative Corporations Law to advance the interest of milk producers through services connected with the purchasing, financing, production, manufacturing, warehousing, processing, marketing and merchandising of milk and dairy products produced by its affiliated co-operatives and in accordance with section 1002.81 of the co-operative payment section of Federal Order No. 2 regulating the handling of milk in the New York-New Jersey marketing area. The defendant corporation was a charter member of Mutual Federation of Independent Cooperatives, Inc., the predecessor of Northeast, and has been a member of Northeast since its inception.
According to the papers submitted upon this motion, it appears that this controversy arose when the defendant’s board of directors approved a deduction of 5 cents per hundredweight of each member’s milk check to be paid over to Northeast to be used by it to improve the economic situation of its members in the maintenance of the federation’s manufacturing operations, to purchase additional needed facilities which will guarantee markets for its members as proprietary members shut down their plants, to provide market and legislative representation and information and to expand field services and milk quality assistance to farmers. Under this investment program the 5 cents per hundredweight contribution paid to Northeast by the members of its affiliated corporations would be placed in a revolving fund and would be repaid to the respective producers after 10 years. Should the board of directors of Northeast determine that the aforesaid payments are to bear interest, provision will be made to pay it at the time the refund of the individual contributions is made. Further provision is made that upon the death of a producer who is a member of an affiliated co-operative, his total investment in the fund will be repaid immediately to his estate, and also that should a producer member retire from and not engage in dairy production for six months, his total investment would be refunded.
The plaintiff objects to the payment of the contribution to Northeast on the grounds that it was illegally assessed by the defendant. He claims that the resolution of the board of directors authorizing the 5 cents per hundredweight deduction from its members’ milk checks was unauthorized and in violation of the by-laws of the corporation, for the reason that pursuant to section 3 of article X thereof the directors were authorized to make deductions only for the limited purposes of selling and *140 transporting milk and other costs and expenses and, therefore, a deduction for any other purpose was illegal.
It appears that at a meeting of the members of the defendant corporation held in October or November of 1967, there was some discussion as well as an explanation of the proposed participation of the defendant in the revolving fund investment program with Northeast. According to the defendant’s president, approximately 11 out of 106 members attended and that number did not constitute a quorum. Subsequently on February 7 and March 18,1968, the board of directors of the defendant corporation passed a resolution authorizing and directing the deduction which is the subject of this litigation.
In seeking an injunction the plaintiff urges that he has no adequate remedy at law because of a provision contained in his agreement with the defendant that he may only terminate his membership agreement between January 1 and January 15 of any year, such cancellation to be effective the following April 1. Therefore, he claims that deductions will be made from his milk checks until such time as he is able to cancel his contract with the defendant, and those deductions in the meantime have resulted and will continue to result in an irreparable loss to him and other objecting members on whose behalf he has brought this action.
Paragraph 2 of the plaintiff’s bulk storage tank producer agreement with the defendant dated July 1, 1957 provides: “ Producer hereby appoints the Cooperative his sole and exclusive sales agent with full authority to sell, market or otherwise dispose of his milk and dairy products, and to distribute the proceeds therefrom in the manner provided in the by-laws of the Cooperative.”
Section 1 of article VII of the defendant’s by-laws provides:
‘ ‘ The board of directors shall manage the business and affairs of the corporation and make the necessary rules and regulations not inconsistent with law or with these by-laws, for the management of the business and guidance of the officers, employees and agents of the corporation.”
It is elementary that the board of directors is the managing body of a corporation, and that the directors convened as a board are the primary possessors of all of the powers which the charter confers and they are charged with the administration of its internal affairs and the management and use of its assets. Section 5 of the Cooperative Corporations Law provides that the applicable sections of the Business Corporation Law shall apply to co-operative corporations, and section 701 of the Business Corporation Law provides that the business of a corpora *141 tion “ shall be managed by its board of directors A court will not and cannot interfere with the ordinary business judgment of a board of directors of a corporation (Manson v. Curtis, 223 N. Y. 313; Nechis v. Gramatan Gardens, 35 Misc 2d 949, 951; Marony v. Applegate, 29 N. Y. S. 2d 421). It is the defendant’s contention that its board of directors had the authority to take such action pursuant to section 3 of article X of the by-laws, which provides: ‘ ‘ Section 3. Each person delivering his milk to the corporation appoints the corporation his sales agent for all the milk he produces for sale and as such, grants it full power and authority to sell said milk in the fluid state, or in its discretion to manufacture the same into such products as it may from time to time determine, and sell such products, the proceeds of all such sale to be blended into one fund and to be distributed equitably among the members on the basis of deliveries, subject to deductions for the costs of handling, processing, transportation, selling and overhead and other costs or expenses, including interest or dividends on certificates of interest and on stock not exceeding eight (8) percentum per annum, and adequate reserves for amortization, and any other purposes which may be deemed necessary in the discretion of- the Board of Directors.”
It was the considered judgment of defendant’s board of directors that such deduction from each member producer was a reasonable and prudent measure which was taken to insure the continued availability of the Northeast facilities for the disposal and marketing of milk and dairy products. It is interesting to note that Northeast, in setting up the program, had provided that any member corporation which was unwilling to participate in the program should be dropped from membership in Northeast, and again it was the opinion of the defendant’s board of directors that it was beneficial to the corporation and its member producers to continue such membership.
The plaintiff does not allege any fraud, overreaching conduct or bad faith on the part of the board of directors of the defendant nor has he submitted any proof upon this motion which would indicate that the board had acted improperly or illegally in any manner.
As the court said in Smith v. Baillie (44 N. Y. S. 2d 217, 220)
‘1 The management of corporations has been entrusted to their directors and officers and the judgment exercised by them is not reviewable by the courts, even if they do not agree with the soundness thereof, in the absence of circumstances establishing bad faith or breach of trust on the part of the directors.” In order to defeat this motion for summary judgment it was *142 incumbent upon the plaintiff, in view of defendant’s prima facie, showing that on the law and the facts the action lacks merit, to come forward and lay bare his proofs of evidentiary facts showing that there is a bona fide issue requiring a trial, and this the plaintiff has failed to do (O’Meara Co. v. National Park Bank of N. Y., 239 N. Y. 386, 395; Dodwell & Co. v. Silverman, 234 App. Div. 362). The plaintiff cannot defeat this motion by general conclusory allegations which contain no specific factual references.
Although the complaint alleges that the action taken by the defendant’s board of directors was unauthorized, the plaintiff has failed to furnish any proof that it was, and the court is, therefore, satisfied that since the directors had the authority to take the action they did, they acted in accordance with'their best judgment. Since the plaintiff does not allege any fraud, bad faith or negligence on their part, their action is not reviewable by the courts. For those reasons, therefore, the complaint is insufficient as a matter of law, and the defendant’s motion to dismiss it is granted, without costs.