TONY STEPHANO, Appellant, v NEWS GROUP PUBLICATIONS, INC., Respondent.

First Department, January 5, 1984

### APPEARANCES OF COUNSEL

*A. Richard Golub* for appellant (*Gary S. Graifman* with him on the brief).

*Slade R. Metcalf* of counsel (*Eugenie C. Gavenchak* with him on the brief; *Squadron, Ellenoff, Plesent & Lehrer,* attorneys), for respondent.

### OPINION OF THE COURT

MURPHY, P. J.

Plaintiff Stephano is a professional model who is paid a fee for the use or publication of his photograph. Defendant News Group Publications, Inc., the publisher of *New York* Magazine (the Magazine), contacted the plaintiff in July of 1981 to do an article on men's fall fashions. Plaintiff avers that he orally agreed with defendant that the photographs, taken in that shooting session, were only to be used in that one article. There is no dispute that the plaintiff's photograph that appeared in the August 31, 1981 issue and his two photographs that appeared in the September 7, 1981 issue were taken in that shooting session. On or about

August 11, 1981, the defendant had sent the plaintiff a written release for all photographs. However, the plaintiff refused to sign that release.

One of the photographs taken in the session appeared in the "Best Bets" column of the August 31, 1981 issue of the Magazine. Over the photograph there was a caption that read as follows:

"Yes, Giorgio

"From Giorgio Armani. Based on his now classic turn on the bomber jacket, this cotton-twill version with 'fun fur' collar features the same cut at a far lower price — about $225. It'll be available in the stores next week.

" — Henry Post

"Bomber Jacket/*Barney's, Bergdorf*
"*Goodman, Bloomingdale's*"

An article entitled "Classic Mixes" appeared in the September 7, 1981 issue of the Magazine. This article on men's fall fashions included two photographs of the plaintiff wearing Giorgio Armani clothing. The price of the clothing was given together with the fact that it could be purchased at Bloomingdale's or Charivari for Men.

In his first cause of action, plaintiff seeks to recover $350,000 compensatory and $350,000 exemplary damages for a violation of section 51 of the Civil Rights Law. Plaintiff alleges in his affidavit that the defendant used his photograph in the August 31, 1981 issue without his written consent. The second cause, grounded upon the same facts, seeks identical damages for an invasion of plaintiff's right of publicity.

In support of defendant's motion for summary judgment, an affidavit was submitted from Henry Post, a contributing editor of the Magazine. Post did not contest the fact that the plaintiff's photograph was used without his written consent in the "Best Bets" column of August 31, 1981. To the extent here relevant, Post declared: "3. I have worked for *New York* since 1980. During that time, I have assisted in researching and writing items for the 'Best Bets' column. That column is a regular news feature of the magazine. It provides the reader of *New York* with information as to interesting products, services, and events

available in the New York metropolitan area. Although the 'Best Bets' column, on occasion, discloses the price of a product or cost of a service, no retailer or producer pays *New York* anything for the publication of such information. That information is included solely for newsworthy purposes."

In opposition to the defendant's motion, plaintiff maintained that Post did not have any knowledge of or experience with the Magazine's advertising department. Plaintiff also made these pertinent comments on the "Best Bets" column found in the Magazine:

"7. While it may be that a party whose service or product is included in 'Best Bets' does not pay a direct advertising fee to be included, the benefits to the magazine are obtained in an indirect manner. Stores, designers and retailers featured there have all advertised in *New York* magazine at other times and places, and giving them this 'breakout' features in the 'Best Bets' column acts as barter for such advertising at another time and place.

"8. The 'Best Bets' feature in question is illustrative. The ad is for a bomber jacket by Giorgio Armani available at Barney's, Bergdorf-Goodman and Bloomingdales. All of the above are advertisers in *New York* magazine. Exhibit 1 annexed hereto contains copies of such ads in New York Magazine.

"9. Furthermore, large sums of money are spent by designers such as Armani each year for publicity of their designs. It is not only spent on advertisements but goes to publicize the particular clothes and the designer thereof. In the instant case, the publicity benefits in the column to the designer and retail outlets mentioned are evident from a fair reading of the column".

Corky Pollan, an assistant editor of the Magazine, submitted a reply affidavit in support of defendant's motion. Pollan stressed that "Best Bets" was an editorial portion of the Magazine. In deciding what to include in "Best Bets", Pollan claimed that no consideration was given to advertising concerns. No payment was ever made to the Magazine for an item appearing in "Best Bets".

Relying upon the cases of *Lopez v Triangle Communications* (70 AD2d 359) and *Pagan v New York Herald Tribune* (32 AD2d 341, affd 26 NY2d 941), Special Term granted defendant's motion for summary judgment. The rationale for the court's determination is found in the following paragraph: "[a]n examination of the exhibits compels the finding that the publication complained of was a newsworthy observation on the part of defendant in a section devoted to keeping the readership apprised of novel happenings and offerings within the metropolitan area and not for advertising purposes or purposes of trade as contemplated by the statute (Lopez v Triangle Communications, Inc., 70 AD2d 359; Pagan v New York Herald Tribune, 32 AD2d 341). The fact as to the availability of the item at certain stores which currently advertise in defendant's magazine without a further showing of benefit to defendant does not sustain the allegation of use for advertising or trade purposes and no factual issue exists to be tried (Hirsch v S. Berger Import & Mfg. Corp., 67 AD2d 30)".

The primary purpose of section 51 of the Civil Rights Law is to protect the sentiments, thoughts and feelings of an individual. The purpose of the statute is remedial and rooted in popular resentment at the refusal of the courts to grant recognition to the newly expounded right of an individual to be immune from commercial exploitation (*Flores v Mosler Safe Co.,* 7 NY2d 276, 280, 281).

In this proceeding, plaintiff Stephano relies primarily upon the language of section 51 which prohibits the use of his picture for advertising purposes or purposes of trade without his written consent being first obtained. Nonetheless, the law is settled that a picture illustrating an article on a matter of public interest is not considered used for the purpose of trade or advertising within the prohibition of the statute unless it has no real relationship to the article or unless the article is an advertisement in disguise. (*Murray v New York Mag. Co.,* 27 NY2d 406, 408, 409.) As will be developed below, factual questions are presented as to whether the article in the August 31, 1981 issue was (i) truly in the public interest or (ii) an advertisement in disguise.

By way of background, certain observations should be made about the article in the June 7, 1981 issue. In a footnote on page 8 of its brief, the defendant concedes that the plaintiff was paid for the two photographs used in the September 7, 1981 issue. Undisputably, the September 7, 1981 article, together with the accompanying photographs, was included in the Magazine for the purposes of trade. Quite simply, the article was included to increase circulation. It is also possible that this article constituted an advertisement in disguise since many of the Magazine's advertisers were mentioned in the copy. More will be said on this point in the discussion of the August 31, 1981 article.

It should be further emphasized that the defendant does not challenge the plaintiff's understanding of the oral agreement that governed the shooting session. The defendant does not dispute the fact that it breached the oral agreement by using plaintiff's photograph in the August 31, 1981 issue. Despite this apparent breach, the defendant chooses to focus attention upon its claim that the August 31, 1981 article was of a newsworthy event. Therefore, it maintains that it did not violate section 51 of the Civil Rights Law. (Cf. *Wrangell v Hathaway Co.*, 22 AD2d 649.)

Notwithstanding the defendant's contention of newsworthiness, the caption and the photograph in the August 31, 1981 issue were identical in form and presentation to those used in the September 7, 1981 issue. This could very well lead a reasonable person to conclude that the August 31, 1981 article was also used for purposes of trade. It must be remembered that the article itself, rather than its location in the Magazine on August 31, 1981, is the determinative factor as to its characterization and its use (*Lahiri v Daily Mirror,* 162 Misc 776, 782).

Although the defendant argues that the August 31, 1981 article is of a newsworthy event, the same might be said of the September 7, 1981 article and all other articles dealing with fashion trends. The real question presented in this case is whether the public interest aspect of the August 31, 1981 article is merely incidental to its commercial purpose. (*Davis v High Soc. Mag.,* 90 AD2d 374, 380, 381, app dsmd 58 NY2d 1115.) In this proceeding, compelling arguments

are made that the defendant did more than merely alert its readership that bomber jackets were in style. The defendant gave the designer name of the bomber jacket, the price and sales locations. Viewing the evidence most favorably to the plaintiff, a factual question is presented as to whether the August 31, 1981 article was actually published for purposes of trade. A collateral question is presented as to whether the article's newsworthiness was merely incidental to the commercial purpose of the article.

Summary judgment should have been denied for the additional reason that the August 31, 1981 article might have been an advertisement in disguise. As was mentioned above, the August 31, 1981 article inured to the benefit to several of the Magazine's regular advertisers. Even though the defendant denied that any remuneration was received for articles appearing in the "Best Bets" column, that is a matter within its exclusive knowledge. The plaintiff should be given the opportunity to explore, on an examination before trial and at trial itself, whether any consideration was given by the advertisers for the passing mention of their names in the "Best Bets" column. Similarly, the plaintiff should be allowed to delve into the question of whether the defendant promised to give its advertisers free exposure in the "Best Bets" column as part of its basic advertisement package.

In view of the factual questions found under the first cause, a discussion of the second cause becomes academic. A comment should be made, however, on Special Term's decision. Special Term relied upon *Lopez* and *Pagan* (*supra*). Suffice it to say that the facts in both of those cases are readily distinguishable from those in the instant proceeding. The foremost distinction is, of course, the fact that the plaintiffs in *Lopez* and *Pagan* were not professional models.

Accordingly, the judgment of the Supreme Court, New York County (RETTINGER, J.), entered December 16, 1982, granting defendant's motion for summary judgment dismissing the complaint, should be reversed, on the law, and the motion should be denied, with costs.

FEIN, J. (concurring). I concur that there are issues requiring a trial. However, I differ with other aspects of the

majority opinion. At issue here and unresolved on the papers before the court is the nature of the agreement between the plaintiff and the defendant respecting the use of the photos taken by the defendant. It appears that there was an agreement of some kind. If plaintiff agreed to have his photograph taken for a fee for use in an article in the Magazine, as seems conceded, and there was a discussion concerning the nature of the article in which the photograph was to be used, the issue is whether the agreed upon use encompassed the actual use (*Brinkley v Casablancas,* 80 AD2d 428, 434).

Although there was no writing, as required by sections 50 and 51 of the Civil Rights Law, it may well be that plaintiff should be foreclosed because, as a professional model, he agreed to such use. The very fact that plaintiff is a professional model who has apparently modeled for this magazine on a number of prior occasions, for use in similar articles, would appear to indicate that there was such an agreement which ought to be enforced. (See *Lomax v New Broadcasting Co.,* 18 AD2d 229; *Booth v Curtis Pub. Co.,* 15 AD2d 343, affd 11 NY2d 907.) The rule announced in those cases that oral consent is insufficient is of doubtful application to a professional model, paid a fee for his services. Plaintiff's affidavit states: "When consenting orally to do this job, I agreed that my picture could be used for inclusion in one article only on men's fall fashions." The content of the conversation is not given by either side. A trial may well be more revealing. In *Lopez v Triangle Communications* (70 AD2d 359) the infant plaintiff was not a professional model and there appears to be no evidence that he was told his photograph would appear in a feature devoted to makeup, clothing and hairstyling. Plainly the depiction was not in a commercial setting. Although oral consent of the infant's parent was given, the case was decided on the basis of the defense here urged.

Similar is *Pagan v New York Herald Tribune* (32 AD2d 341, affd 26 NY2d 941), where the plaintiff was not a professional model and apparently had no agreement with the defendant, so that the sole issue was the nature of the article and whether it constituted an advertisement in disguise.

Although the statute requires a writing, it may be that a defense should be available even in the absence of a writing where it is plain that the parties specifically agreed upon the use now complained of (see *Welch v Mr. Christmas,* 57 NY2d 143; *Brinkley v Casablancas,* 80 AD2d 428, *supra*).

ASCH, J. (dissenting). In July of 1981, Henry Post, a contributing editor of *New York* Magazine, published by defendant, began to work on a lead article concerning men's fashions. It appeared in the September 7, 1981 issue of *New York.* The article entitled "Classic Mixes" contained three photographs (out of nine) of plaintiff Stephano, a professional model, displaying fall clothing. Plaintiff admits he contracted to model for that article and did not complain about the use of his photographs in said article.

One of the photographs taken for the September 7 article was used in a weekly featured column in the August 31, 1981 issue of *New York* entitled "Best Bets" and subcaptioned, "The best of all possible things to buy, see, and do in this best of all possible cities." The text of the item mentioned that a new style "bomber jacket" by designer Giorgio Armani would be available the following week in stores such as Barney's, Bergdorf Goodman and Bloomingdale's, and gave the approximate cost. This short article carried the byline of Henry Post.

Plaintiff then brought this action against defendant as publisher of *New York* for damages resulting from the publication of his photograph in the August 31, 1981 issue without his consent. The first cause of action alleged violation of sections 50 and 51 of the New York Civil Rights Law and the second cause of action alleged violation of plaintiff's right of publicity.

Defendant moved for summary judgment and, for purposes of this motion, admitted that it had no written consent from plaintiff for the publication of any photographs of him. Special Term granted the motion. I would affirm.

Section 51 of the Civil Rights Law provides, *inter alia:* "Any person whose name, portrait or picture is used within this state for advertising purposes or for the purposes of

trade without * * * written consent * * * may maintain an equitable action * * * against the person, firm or corporation so using his name, portrait or picture, to prevent and restrain the use thereof; and may also sue and recover damages for any injuries sustained by reason of such use".

This statute was enacted after the Court of Appeals decided that no cause of action existed in favor of a young woman plaintiff whose photograph was distributed to advertise flour without her authorization (*Roberson v Rochester Folding Box Co.,* 171 NY 538).

As this court has previously explained: "Since its purpose 'is remedial and rooted in popular resentment at the refusal of the courts to grant recognition to the newly expounded right of an individual to be immune from commercial exploitation' (*Flores v Mosler Safe Co.,* 7 NY2d 276, 280-281; see *Lahiri v Daily Mirror,* 162 Misc 776, 779), section 51 of the Civil Rights Law has been liberally construed over the ensuing years. Where First Amendment guarantees are involved, however, its application has been restricted 'to avoid any conflict with the free dissemination of thoughts, ideas, newsworthy events, and matters of public interest.' (*Spahn v Julian Messner, Inc.,* 18 NY2d 324, 328, vacated and remanded 387 US 239, on rearg 21 NY2d 124.) '[F]reedom of speech and the press under the First Amendment transcends the right to privacy.' (*Namath v Sports Illustrated,* 80 Misc 2d 531, 535, affd 48 AD2d 487, affd 39 NY2d 897.)" (*Brinkley v Casablancas,* 80 AD2d 428, 432.)

Section 51 specifically requires for its application that the challenged activity must be undertaken for the purposes of trade or advertising. Unauthorized uses of a photograph are immune from legal redress if the purpose of the publication is to disseminate information of public interest (*Murray v New York Mag. Co.,* 27 NY2d 406).

The fact that the article may have been included to increase the circulation of the Magazine "does not render it violative of the statute" (*Murray v New York Mag. Co., supra,* at p 409; see, also, *Arrington v New York Times Co.,* 55 NY2d 433, 440).

In *Pagan v New York Herald Tribune* (32 AD2d 341, affd 26 NY2d 941) it was held that pictures of plaintiffs pub-

lished without their consent in photographs depicting a new type of swimsuit worn by a female model were not published for trade or advertising purposes. This was true even though the pictures were accompanied, as in the instant case, by a price and the names of the designer and store where the bathing suit could be purchased. The court there held the publication was "a proper dissemination of fashion news of legitimate public interest" (*Pagan v New York Herald Tribune, supra,* at p 343).

In *Lopez v Triangle Communications* (70 AD2d 359) this court again addressed the issue of whether an article devoted to fashion or cosmetic news containing brand names is within the ambit of section 51 or insulated from liability. In that case, the infant plaintiff's photograph appeared, without a written release, in a feature devoted to makeup, clothing, and hairstyling. The article contained a discussion of the brand names of products used. The *Lopez* court stated that plaintiff relied on the circumstance that the issue of the magazine containing this article also published an advertisement by one of the concerns whose products were mentioned in the article. "However," the court added, "the evidence was uncontradicted that the article was prepared wholly without regard to advertising, and that brand names are customarily described as a service expected by readers. We see nothing in this to support the conclusion that the article involved the use of the plaintiff's picture and name 'for advertising purposes, or for purposes of trade'" (*Lopez v Triangle Communications, supra,* at p 361).

Again, in a previous decision of this court, a photograph of a plaintiff, published in an article showing men and boys wearing sports jackets of a particular material, without the consent of plaintiff, was held to not be for advertising purposes or for the purpose of trade (*La Forge v Fairchild Pub.,* 23 AD2d 636).

The record before this court shows that the "Best Bets" column subtitled, "The best of all possible things to buy, see, and do in this best of all possible cities", is a regular news feature of the Magazine and is used to provide readers with information as to interesting products, services and events available in the New York area. An editor,

Corky Pollan, confirmed in an affidavit submitted below that the column was an editorial portion of the Magazine. The use of the brand name, price and available sources to purchase the clothing did not detract from its informational purpose but rather *added* to that purpose. Readers of magazines and newspapers expect to be informed not only of the latest movies, plays, restaurants, styles of clothing, etc. They expect and are told where the movie or play can be seen, where and how delicious (or ill-prepared) the food is at the latest most popular dining place. Certainly, they expect to be told which clothing will soon become stylish and where it can be bought. This sort of featured item may be found in virtually every newspaper and periodical today.

Plaintiff attempted to show that "Best Bets" was an "advertisement in disguise" (*Murray v New York Mag. Co., supra*) because of the fact that the stores mentioned had advertised at one time or another in *New York*. However, no evidence is shown of an advertisement of one of these establishments advertising a Giorgio Armani creation. As in *Lopez v Triangle Communications* (*supra*) the evidence that the article was prepared wholly without regard to advertising was uncontradicted. The insertion of the informative facts such as the price of the product or the name of the stores where it could be purchased is "merely incidental to a public interest presentation" (*Pagan v New York Herald Tribune, supra,* at p 343; *Lopez v Triangle Communications, supra*).

This court can safely conclude that plaintiff has no other evidence than that already furnished on this motion. The opposing party has the duty on a motion for summary judgment to come forward and lay bare his proofs of evidentiary facts (*Hanson v Ontario Milk Producers Coop.,* 58 Misc 2d 138). Plaintiff has attempted to place this action on the Trial Calendar, indicating in the note of issue and statement of readiness that discovery was waived. It is clear, therefore, that no factual issues remain.

The second cause of action asserting an "invasion of the right of publicity" was also properly dismissed by Special Term. "[W]hatever may be the law in other jurisdictions with respect to the right to judicial relief for invasion of

privacy in consequence of unreasonable publicity, in our State thus far there has been no recognition of such right other than under sections 50 and 51 of the Civil Rights Law" (*Wojtowicz v Delacorte Press*, 43 NY2d 858, 860).

Plaintiff attempts upon this appeal to base his claim not only upon the photograph in the August 31 issue but also on the photographs in the September 7 issue. However, his complaint, although it mentions both the August 31 and the September 7, 1981 issues of the Magazine, states at paragraph 6: "At no time has plaintiff given written consent or any consent or any right to use his photograph, name or any information relating to plaintiff as depicted on page 49 of the magazine for reproduction, publicity or for purposes of trade, advertising or otherwise by way of release or otherwise." The depiction on page 49 relates to the August 31, 1981 issue and therefore this is the only photograph "complained of" in the complaint. In addition, plaintiff's affidavit in opposition to the motion, verified June 21, 1982, also solely attacks the use of the photograph in the August 31, 1981 issue. In any event, the principles set forth herein apply with equal, if not greater, force to the publication of September 7, 1981, since it is similar in format to the August 31 publication.

Finally, any position that plaintiff's status as a professional model gives him a special status vis-à-vis the use of matters of legitimate public interest as exempt from the protection of the Civil Rights Law is misplaced. That plaintiffs in *Pagan* (*supra*) were not professional models is not relevant. The use and context of the photos were the same whether the person portrayed was a professional or amateur model, or merely a bystander. Also, *Lopez v Triangle Communications* (*supra*) appears to directly deal with this issue. In *Lopez* the court noted: "Each of the teen-age participants in the feature is *paid* for posing, and they and their parents normally sign releases" (at p 360; emphasis added). One of the hallowed distinctions between professional athletes and models and amateurs is that "professionals" get paid for their efforts. It may be that as a professional model, plaintiff has a cause of action sounding in contract, but he does not have a cognizable claim under sections 50 and 51 of the Civil Rights Law.

Accordingly, the appeal from the order of the Supreme Court, New York County (RETTINGER, J.), entered December 6, 1982, should be dismissed as subsumed in the judgment, and the judgment of the Supreme Court, New York County, entered December 16, 1982 thereon, granting defendant's motion for summary judgment and dismissing plaintiff's complaint, should be affirmed.

MILONAS and KASSAL, JJ., concur with MURPHY, P. J.; FEIN, J., concurs in an opinion; ASCH, J., dissents in an opinion.

Judgment, Supreme Court, New York County, entered on December 16, 1982, reversed, on the law, and the motion denied. Appellant shall recover of respondent $75 costs and disbursements of this appeal. The appeal from the order of said court, entered on December 6, 1982, is dismissed as having been subsumed in the appeal from the judgment, without costs and without disbursements.