534 So.2d 1207 (1988)
Lyra PITTMAN, Bobbie H. Reagan, Cyril H. Hermele, Helmut Schwarz, Lisa Shcwarz, Winnie Costigan, Egon Wiedmann, William Wright and Luanne Wright, Simon Braitman and Josephine Braitman, Appellants/Cross Appellees,
v.
GROVEOWNERS COOPERATIVE OF LOXAHATCHEE, INC., et al., Appellees/Cross Appellants.
No. 87-0250.
District Court of Appeal of Florida, Fourth District.
November 23, 1988.
Rehearing Denied January 13, 1989.
*1208 Daniel H. Jones, West Palm Beach, for appellants/cross appellees.
Margaret L. Cooper of Jones & Foster, P.A., West Palm Beach, for appellees/cross appellants-Bernard, Lublin & Kabat; Larry Klein of Klein & Beranek, West Palm Beach, for appellee/cross appellant-Groveowners' Co-op.
DELL, Judge.
Appellants seek reversal of a final judgment entered on a directed verdict and a jury verdict in an action for damages against appellees for negligence and breach of fiduciary duties.
Appellee Groveowners Cooperative of Loxahatchee, Inc. (GCL), a non-profit corporation, maintained, harvested and marketed citrus products grown on its members' land. Appellants were members and patrons of GCL. This matter arises out of a dispute over the method used to calculate the distribution of profits derived from the sale of oranges and grapefruits grown on land managed by GCL, and a dispute over the amount of money paid to appellee Kabat for services rendered. GCL managed approximately 312 acres of land comprised of different size parcels and owned by many different owners including appellants. From 1978 to 1985 GCL operated the land as a single enterprise. GCL distributed profits solely on a per-acre method and did not maintain records as to the amount or type of fruit grown on each owner's land. Appellants did not object to this method of distributing profits until they withdrew from GCL in 1985.
After appellants withdrew as members and patrons of GCL, they filed suit against GCL and the individual appellees, Darwin Kabat, Howard Lublin and Burton Bernard. Appellants' complaint contained four counts. Count I sought damages against GCL for negligence in the handling of appellants' monies and the distribution of profits. Count II alleged that GCL breached a fiduciary duty by improperly distributing profits and by paying Kabat an excessive salary. Count III sought damages from the individual appellees for alleged negligence in the distribution of funds and the payment of improper salaries. Count IV claimed damages from the individual appellees for breach of a fiduciary duty by mishandling funds. Appellees denied all of the essential allegations in appellants' complaint and raised affirmative defenses of waiver, estoppel, agreement, ratification, laches and accord and satisfaction. Appellees also claimed that an ambiguity in the language contained in the bylaws allowed them to distribute profits on a per-acre basis.[1] At the close of appellants' case the *1209 trial court entered a directed verdict in favor of GCL on the allegations contained in Count II of appellants' complaint. The trial court also granted a directed verdict in favor of the individual appellees on the claims asserted in Counts III and IV of appellants' complaint. At the close of all of the evidence, the trial court granted appellants' motion for a directed verdict against GCL on the affirmative defenses of laches and accord and satisfaction. The case went to the jury on appellants' claim against GCL for negligence and GCL's affirmative defenses of waiver, estoppel and ratification. The jury entered a verdict in favor of GCL.
Appellants raise four points on appeal. Three of the points relate to directed verdicts entered by the trial court on appellants' claims against GCL for breach of a fiduciary duty by improperly distributing profits; for negligence and breach of fiduciary duty by GCL in paying excessive compensation to Kabat; and the entry of a directed verdict in favor of the individual appellees on the issues of breach of fiduciary duty and negligence. Appellants also contend that the trial court erred in instructing the jury on the defenses of waiver, estoppel, ratification and accord and satisfaction.[2] Appellees cross appeal and claim the trial court erred when it directed a verdict on their counterclaim and when it denied their motion for leave to amend their counterclaim. We affirm.
We find no error in the trial court's entry of a directed verdict against appellants on their claims against GCL for breach of a fiduciary duty by improperly distributing profits and for negligence and breach of a fiduciary duty in paying excessive compensation to Kabat. Initially, we note that there are distinguishing characteristics between a cooperative marketing association and a business corporation.
A cooperative marketing association, as the name implies, is a cooperative organization, usually incorporated, of growers or producers of some particular agricultural or horticultural crop or products, the principal purpose of which is to market or control the marketing, by or through the association, of the crop or products grown or produced by the members for the best interests and to the best advantage of the members. In other words, agricultural competitors ban [sic] together to improve their strength and power in the marketplace. They are cartels within the precise meaning of that concept for they seek to maintain the existence and further the profit interest of their members. The fundamental characteristics of an agricultural or farmers' cooperative, as distinguished from business corporations, are that the cooperative is operated primarily for the mutual benefit of its members as producers and not as stockholders, and the advantages and benefits accrue to the members primarily because of their patronage with the association rather than from their financial investments in it.

Fletcher Cyc Corp § 8225 (Perm Ed) (emphasis added; footnotes omitted).
Appellants argue that GCL breached its fiduciary duty in making distribution of profits because it failed to distribute profits based upon the actual production of citrus on each member's land rather than on a per-acre distribution. Section 619.03, Florida Statutes (1987) provides:
Such associations shall not have a capital stock, and its business shall not be carried on for profit. Any person, or any number of persons, in addition to the original incorporators, may become members of such association, upon such terms and conditions as to membership and subject to such rules and regulations as to their, and each of their, contract and other rights and liabilities between it and the member, as the said association shall provide in its bylaws.
Since no separate marketing agreement existed between the members and the Co-op, the bylaws created the contractual relationship *1210 between GCL and its members. The parties to this appeal strongly disagree as to the clarity of the bylaws. Appellants claim the clear and unambiguous language of the bylaws required distribution of profits based upon the actual production from each member's land. Appellees, on the other hand, claim the court properly held that the bylaws contained ambiguous language that permitted distribution on a per-acre basis. As we see it, the contractual basis created by the bylaws provided the terms for the growing, marketing, sale and distribution of profits. Although appellants ultimately expressed disagreement with GCL's distribution of profits on a per-acre basis, they did not object to this method for almost seven years. However, appellants failed to point to a specific provision in the bylaws that expanded GCL's duty beyond a good faith performance of the contract (bylaws). In the absence of such evidence the trial court did not err when it granted a directed verdict in favor of GCL on this claim.
Next, we find no error in the trial court's entry of a directed verdict on appellants' claim against GCL for negligence and breach of a fiduciary duty in paying excessive compensation to Kabat. Kabat's compensation increased from $10,450 in 1980 to $63,368 in 1985. During the corresponding period, the profits of GCL increased from $173,000 to $442,000. In 1983, the directors changed the basis for Kabat's compensation from 8 percent of the net amount paid to the grove owners to 10 percent of the first $250,000 paid plus 15 percent of the amount paid in excess of $250,000. The members approved the compensation formula at the January, 1984 annual meeting.
The record does not support appellants' argument that the partnership called "BLK" made up of Kabat, Lublin and Bernard, had control of the voting at all meetings of the shareholders. Members voted on the basis of one vote per acre. "BLK" owned 115 acres. Obviously, 115 votes did not comprise a majority of the 312 acres managed by GCL. The board of directors voted to increase Kabat's compensation and at the January 27, 1984 annual meeting, the general membership approved an increase in Kabat's salary. We find nothing in the record that would support a finding of fraud, conspiracy, bad faith or that GCL's board of directors acted ultra vires. Rather, the record demonstrates that during the period from 1978 to 1984 the profits of GCL greatly increased to the benefit of its members. The decision to increase Kabat's compensation constituted a business judgment which the trial court properly upheld in the absence of appellants' proof of bad faith on the part of GCL. In Lake Region Packing Association v. Furze, 327 So.2d 212, 216 (Fla. 1976) the court said:
In Florida, corporate directors generally have wide discretion in the performance of their duties and a court of equity will not attempt to pass upon questions of the mere exercise of business judgment, which is vested by law in the governing body of the corporation. Orlando Orange Groves v. Hale, 119 Fla. 159, 161 So. 284 (1935).
See also Hanson v. Ontario Milk Products Cooperative, Inc., 58 Misc.2d 138, 294 N.Y.S.2d 936 (N.Y. Sup. Ct. 1968) (management of corporation is entrusted to its directors and officers, and the exercise of their business judgment is not reviewable by courts in absence of circumstances establishing bad faith or breach of trust on the part of directors).
We find no error in the trial court's entry of a directed verdict in favor of the individual appellees. Appellants again argue that the individual appellees, voting as a block, controlled the general membership meetings. Appellants claim that since the individuals constituted three of the four members on the executive committee, and served as officers and directors, that they had the power to, and did, control the manner of distribution of profits and the increase in Kabat's compensation. The record shows that three directors did not constitute a majority of GCL's ten member board of directors. We find evidence in the record which supports the directors' decision to increase Kabat's compensation. *1211 The standard used to measure the conduct of directors has been stated as follows:
"It is well established that courts generally will not interfere with the internal management of a corporation at the request of a minority stockholder or a member. The conduct of the corporation's affairs are placed in the hands of the board of directors and if the majority of the board properly exercises its business judgment, the directors are not ordinarily liable. This sound general rule, however, is subject to the important exception that directors will be held liable if they permit the funds of the corporation or the corporate property to be lost or wasted by their gross or culpable negligence." (Citation omitted; emphasis original.)
Parish v. Maryland & Virginia Milk Producers Assoc., 261 Md. 618, 277 A.2d 19, 48 (1971).
Finally, we find no error in the trial court's denial of appellants' motion for a directed verdict on appellees' affirmative defenses of waiver, estoppel, agreement and ratification. Appellants argue that these defenses should have been stricken since their claim was one for negligence by GCL in the manner in which it handled their money and distributed profits. We find merit in appellees' argument that the gravamen of appellants' complaint was negligent breach of contract. Appellants alleged that appellees breached duties which were created by the bylaws of GCL. We fail to see how a pure action for negligence could be stated since no common law duty existed. Accordingly, we believe the affirmative defenses of waiver, estoppel, agreement and ratification were properly submitted to the jury. See Ramada Development Co. v. Rauch, 644 F.2d 1097 (5th Cir.1981) (failure to instruct jury regarding negligence not reversible error where negligence claim subsumed by breach of contract claim). The record demonstrates that from 1978 to 1984, appellants did not object to the per-acre method of distribution of profits utilized by GCL. Even if it could be said that GCL had breached its contract by misconstruing its bylaws, there is ample evidence in the record to support the jury's finding in favor of appellees based upon appellees' affirmative defenses.
Accordingly, we affirm the final judgment in favor of appellees in all respects.
AFFIRMED.
ANSTEAD, J., and WARNER, MARTHA C., Associate Judge, concur.
NOTES
[1] Appellees brought a counterclaim against appellants seeking contribution and indemnification based on allegations of negligence and breach of fiduciary duty by appellants during the time they served as directors of GCL. The trial court entered a directed verdict on this count of the counterclaim.
[2] The trial court did not instruct the jury on accord and satisfaction.