OPINION OF THE COURT
Thomas F. Liotti, J.
The defendant is charged by a simplified traific information, No. TI439674 4, with a violation of Vehicle and Traffic Law § 1180 (d) in that it is alleged that on July 8,1992 at 9:25 a.m., he was speeding, to wit: 44 miles per hour in a 30-miles-per- *240 hour zone. Further, it is alleged that at the time of the speeding violation, he was heading southbound on Brushollow Road, in the Incorporated Village of Westbury, County of Nassau, State of New York. Following a plea bargaining session and prior to entering a plea, the defendant requested that the court consider certain evidence in his behalf. The Village of Westbury was represented by its prosecutor. The defendant appeared pro se. The court stated that it would consider the defendant’s "evidence” if he was making a motion to dismiss and if the "evidence” was attached as exhibits to his papers. The defendant indicated that he wished to make a motion to dismiss. He has submitted papers to the court requesting a dismissal of the charge. The prosecutor has submitted papers in opposition. At the time of the last court appearance and following plea discussions between just the prosecutor and the defendant, this Justice inquired of the prosecutor why he was not dismissing this case since he had previously, on his own motion, dismissed several other cases, for alleged speeding violations, in the same geographic location, at approximately the same time of the year, because a speed sign was obliterated by foliage. The prosecutor acknowledged the prior cases as well as his actions therein, but in essence, stated that he was entitled to change his mind and declined to dismiss this case even though the facts are, for all intents and purposes, the same as those wherein the charges were dismissed. The prosecutor also argues against dismissal because he claims that a question of fact is presented concerning an alleged obliterated sign which can only be resolved at trial. The earlier dismissals were not revealed to the defendant prior to the court’s inquiry.
JUDICIAL NOTICE
The court takes judicial notice of the prior case dispositions, the condition of the foliage and the obliterated nature of the sign. (See, CPLR 4511; Richardson, Evidence § 25 et seq. [Prince 10th ed].) The People do not deny the defendant’s claim that the sign was obliterated. Rather, the People boldly state: "The question of whether or not the traffic sign was visible with reasonable diligence is a question of fact to be determined upon a trial, this is not the proper case to be dismissed on papers.” It has been written, albeit in civil law, that: "When the movant’s papers make [sic] out a prima facie basis for a grant of the motion, the opposing party must 'come forward and lay bare his proofs of evidentiary facts showing *241 that there is a bona fide issue requiring a trial * * * [He] cannot defeat this motion by general conclusory allegations which contain no specific factual references.’ ” (See, Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3212:16, at 324; Hanson v Ontario Milk Producers Coop., 58 Misc 2d 138 [1968].) Further, "[i]f a key fact appears in the movant’s papers and the opposing party makes no reference to it, he is deemed to have admitted it.” (See, Siegel, op. cit; Laye v Shepard, 48 Misc 2d 478 [1965], affd 25 AD2d 498 [1st Dept 1966].)
COLLATERAL ESTOPPEL
While the court recognizes that the legal doctrine of collateral estoppel traditionally applies in civil law, it clearly has meaning here. It has been referred to as "issue preclusion”. (See, Restatement [Second] of Judgments § 28.) "Where the issue is the same, the party sought to be bound is the same in two (2) separate matters and that party had a fair chance to have the same issue [sic] determined in his favor in the first case, and failed”, the doctrine applies. (See, Siegel, NY Prac § 457, at 605 [1st ed].) Courts have found that: "the estoppel doctrine * * * applies] not only to matters actually litigated, but also to all which are necessarily established by the earlier judgment, litigated or not.” (See, Siegel, op. cit, § 464, at 614; Schuylkill Fuel Corp. v B. & C. Nieberg Realty Corp., 250 NY 304 [1929]; Statter v Statter, 2 NY2d 668 [1957].)
In the previous cases heretofore referred to, the same prosecutor was present, the issue of foliage and sign obliteration was aired and on that basis the cases were dismissed on his motion. This court finds that the legal doctrine of collateral estoppel applies here and that the prosecutor is thus estopped from denying foliage and sign obliteration in this case. The prosecutor did not deny the obliteration in his papers, but had he done so, the court finds that he would have been precluded from asserting such a denial. Perhaps that is why he elected not to interpose a specific denial here. The court also finds that these rulings are stare decisis. Therefore, they shall apply to all cases similarly situated. The Village’s remedy is to eliminate the foliage obliteration of the sign by pruning the branches that cause the sign to be hidden from view. In other respects, the prosecutor should not attempt to avoid disclosure of facts or prior dispositions which may be helpful to the defendant. (See, Brady v Maryland, 373 US 83 [1963]; People v *242 Ahmed, 20 NY2d 958 [1967]; People v Bottom, 76 Misc 2d 525 [Sup Ct, NY County 1974]; People v Smith, 50 AD2d 670 [3d Dept 1975]; People v Mackey, 52 AD2d 662 [3d Dept 1976].) Thus, the prosecutor must, even without a demand from the defendant or a specific request, disclose to him all evidence in his possession which is favorable to the defense and material to either guilt or punishment.
ETHICAL OBLIGATIONS
In this case there has been some reluctance on the part of the prosecutor to disclose the names of the similar cases where he moved to dismiss the charges. When the earlier dismissals were raised by the court, the prosecutor appeared less than forthcoming with information about the earlier dismissals or even an acknowledgment that these dismissals occurred.
Naturally, the Code of Professional Responsibility as adopted by the New York State Bar Association is binding upon all lawyers, including Judges who are also lawyers. This Village Justice has never stopped being a lawyer. While Ethical Considerations do not have the binding effect of Disciplinary Rules, they do give attorneys compelling guidance as to their conduct in dealing with adversaries. EC 7-23 provides: "Where a lawyer knows of legal authority in the controlling jurisdiction directly adverse to the position of his client, he should inform the tribunal of its existence unless his adversary has done so; but, having made such disclosure, he may challenge its soundness in whole or in part.”
In this instance, the prosecutor should have been the first one to immediately disclose to the defendant, even during his plea discussions, the existence of the prior cases and his laudatory positions therein. The prosecutor erred in attempting to reverse himself, but even more so by not openly disclosing his substantial change in position. The court cannot condone these actions by the prosecutor and will not acquiesce to nondisclosure.
The American Bar Association Standards Relating to the Administration of Criminal Justice: Chapter 3, The Prosecution Function, provides for the conduct of prosecutors. It states, among other things, as follows:
"Standard 3-3.11. Disclosure of Evidence by the prosecutor, "(a) It is unprofessional conduct for a prosecutor intentionally to fail to make disclosure to the defense, at the earliest *243 feasible opportunity, of the existence of evidence which tends to negate the guilt of the accused as to the offense charged or which would tend to reduce the punishment of the accused”; and
"Standard 3-1.1 * * *
"(c) The duty of the prosecutor is to seek justice, not merely to convict.”
The court finds that the prosecutor should have used his discretion to dismiss this case at the earliest possible time. Not only did he refuse to do so when it was strongly urged upon him by both the defendant and the court, but he prolonged this case still further by essentially forcing the defendant to file a motion and then filing papers in opposition, in large measure, devoid of law. Clearly, this does not place our system of justice in a good light. The defendant has said as much in his papers, together with expressing his incredulous, exasperated and fully understandable frustration.
EQUAL PROTECTION
The court also finds that it is both arbitrary and capricious for the prosecutor to not afford this defendant the same treatment that he extended to several other defendants in similar circumstances. The court concludes that it would be a gross violation of the 14th Amendment of the United States Constitution and article I, § 11 of the New York State Constitution to not afford this defendant the "equal protection of the laws,” to wit: the same disposition as defendants similarly charged in nearly identical circumstances. This is not a case where the bargains may be different because of, for example, disparate cooperation by multiple defendants. No. The cases are the same. There are no different, extenuating circumstances. The prosecutor, on his own, moved to dismiss before and he should have done so here. The court cannot countenance deja vu dispositions where the prosecutor says "do over” and we go back to redo those matters already disposed of. Nor does the court believe that the prosecutor can simply change his mind as he has suggested.
SIGN OBLITERATION
Lastly, in enacting Vehicle and Traffic Law of 1929 § 54 (now §§ 1683-1685), the Legislature intended that a motorist, although presumed to know provisions of law regulating operation of vehicles on highways outside of municipalities, could *244 not be presumed to know various speed limitations enacted by cities and villages, and therefore required municipalities to erect signs warning motorists of speed limitations. (See, People v Schrader, 172 Misc 246 [1939].)
Also, Vehicle and Traffic Law § 1110 (b) provides that if signs are not "property] positioned]” and "sufficiently legible”, they shall not be enforced against an alleged violator. Any presumption of validity of the signs as provided for in the same section is overcome by the prosecutor’s previous dispositions in similar cases, the photographic exhibits attached to the defendant’s papers here and uncontradicted by the prosecutor.
Signs must be properly posted and readable. (See, People v Corwin, 304 NY 362, 366, rearg denied 304 NY 740 [1952]; Rose, New York Vehicle and Traffic Law § 34:7, at 307 [Lawyers Coop Publ Co 1984].) According to Mr. Rose, "the signs must conform to Department of Transportation regulations. The regulations established in 17A NYCRR Parts 200-350 (17 NYCRR § 108.8 covers speed limit signs) cover a variety of circumstances, types of limits, placement, etc.” This court holds that the sign was obliterated and therefore did not comply with either statutory or regulatory law.
Finally, the court takes this opportunity to express its disapproval of "speed traps.” A "speed trap” is a location on a highway frequented by both police with radar and many vehicles travelling above a posted speed. In this case the highway has recently been widened and newly paved. It is conducive to travelling at speeds over the limit. It is almost an attractive nuisance for adults where operators are lulled into the security of the new roadway only to find that they should have been more alert. While the residents of Westbury always appreciate the good work of the police, the court must begin to question why so many tickets are given out in the same area. The court must question the adequacy of the posted signs as well as whether motorists have received ample notice of the speed in other respects. Also, given the fact that the roadway is newly constructed, is a 30-miles-per-hour speed limit realistic or should it be raised? A new traffic survey might be very helpful in determining whether limits should be increased on the roadway, say to 40 miles per hour instead of the existing 30 miles per hour.
Unfortunately, while the court notes a proliferation of speeding tickets for the roadway in question, it does not note *245 similar enforcement efforts elsewhere in this large Village of nearly 15,000 residents. A great many other roadways in the Village cry out for enforcement, and yet it seems that these areas are being sorely neglected by the Nassau County Police Department in favor of the far easier pickings available in this deceptive "speed trap”.
CONCLUSION
For all of the reasons stated herein, the court hereby dismisses simplified traffic information No. TI439674 4.