Matter of S.L.K. v P.J.B. (2006 NY Slip Op 52449(U))

[*1]

Matter of S.L.K. v P.J.B.

2006 NY Slip Op 52449(U) [14 Misc 3d 1208(A)]

Decided on December 21, 2006

Family Court, Nassau County

Lawrence, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on December 21, 2006

Family Court, Nassau County
In the Matter of a Paternity Proceeding S.L.K., Petitioner,
against
P.J.B., Respondent.
xx06

LEE KLEINHART, ESQ.
Attorney for Petitioner - S.K.
COURTNEY VOSES, ESQ.
Attorney for Respondent - P.B.
ROBERT I. KURTZ, ESQ.
Law Guardian

Richard S. Lawrence, J.
In this support matter, the Support Magistrate referred the issue of equitable estoppel to this Court, pursuant to Family Court Act §439. 18B counsel had been provided to the Petitioner Father by the Support Magistrate, and a Law Guardian had been appointed by him as well. This Court then appointed 18B counsel for the Respondent Mother.
Upon the parties' appearances, with counsel, this Court set a motion schedule to address the issue of equitable estoppel. The Petitioner Father requests an order pursuant to "Family Court Act Section 532[CPLR 3121]" directing the Respondent and the child to submit to genetic blood testing, and for an order appointing a
"Handwriting Analysis Expert and Investigator."
In support of his application, the Petitioner's attorney sub-
mits his affirmation, alleging that "upon information and belief" the attorney has reviewed the Court's file, and points to an acknowledgment of paternity, dated March 6, 2001, "allegedly executed by the Petitioner, 3 years after the birth of the Respondent's child," whose date of birth is March 30, 1998. The sole exhibit annexed to the moving papers is that acknowledgment of paternity, with the date of birth and the date of the alleged execution highlighted by marker.
Petitioner's counsel continues that the acknowledgment of paternity "was apparently used to create a New Birth Certificate' 3 years after the child's birth;" that Petitioner has spoken to him, denies he is the father of the child and has told the attorney that the alleged signature upon the acknowledgment of paternity is not his signature. The supporting affirmation continues that "at various times," the Respondent indicated that her son is not the child of the Petitioner, that Petitioner was incarcerated "on or about" the time the child was conceived, that a blood grouping test is appropriate and the request for the appointment of an examiner of questioned documents (referred to in the moving papers as a "handwriting [*2]expert") should be granted, "to determine if the Respondent fraudulently forged the Petitioner's signature" upon the
acknowledgment of paternity. It is interesting to note that other than the attorney's affirmation, there is no supporting affidavit by the Petitioner himself.
Respondent's opposing papers consist of her attorney's affirmation in opposition, her memorandum of law, and Exhibits A and B. Respondent alleges that the movant Petitioner has not submitted to this Court the requisite showing, in his motion papers, sufficient to grant him any relief. In particular, she states that the failure to submit an affidavit based upon personal knowledge by the Petitioner himself, is fatal to his instant application.
However, an attorney may refer to uncontroverted documenta-tion, in support of her motion or opposition, and that such documentation need not be upon personal knowledge. See Barclay's
Bank of New York, N.A. v Smitty's Ranch, Inc., 122 Ad2d 323 (3d Dept 1986); and Weingarten v Marcus, 118 AD2d 640 (2d Dept 1986). In the matter now before this Court, Respondent attaches as Exhibit A, a certain paternity petition brought by this Petitioner and against this Respondent; and as Exhibit B, a final order of custody and visitation dated November 1999 (the exact date is omitted in the order), signed by a Judge of this Court.
Respondent's attorney further alleges, by hearsay, that she has personally investigated this matter and obtained specific dates of incarceration of this Petitioner, none of which are approximately nine months before the birth of this child in this matter. In fact, although the child was born on March 30, 1998, the alleged dates of incarceration were during the years 1993, 1998 and 1999 only. Glaringly missing are any reply papers on behalf of the Petitioner, addressing this issue, as the child would have had to be conceived in 1997. Since this is a matter of hearsay, this Court must disregard these allegations. Likewise, Petitioner's attorney's hearsay statement that he was incarcerated "on or about" the time the child was conceived, must also be disregarded.
With respect to Respondent's Exhibit A, the petition for paternity by this Petitioner in a prior recent matter, it is noteworthy the Petitioner here has filed no reply affidavit denying its authenticity; or, in fact, any reply papers at all. Where a key fact appears in the papers submitted (here, by the Respondent), and the opposing party (here, the Petitioner - movant) makes no reference to it, he is deemed to have admitted it. Laye v Shepard, 48 Misc 2d 478 (Supreme Ct of New York, New York Cty., 1965), aff'd 25 AD2d 498 (1st Dept 1966), appeal den'd 17 NY2d 420 (1966). It is therefore incumbent upon the Petitioner to "lay bare his proofs of evidentiary facts showing there is a bona fide issue requiring a trial." Hanson v Ontario [*3]Milk Producers Co-Op, Inc., 58 Misc 2d 138, 142 (Supreme Ct of New York, Oswego Cty, 1968); and Young v Fleary, 226 AD2d 454 (2d Dept 1996).
The Law Guardian submits an affirmation in opposition, attach-ing as his sole exhibit the same final order of custody and visita-
tion as Respondent's exhibit B, but this one bearing a date of November 18, 1999 and a full signature of the Family Court Judge. He opposes Petitioner's instant motion, alleging that the child refers to the Petitioner as "my Dad," that the child "does not
regard any other individual as his father," and that "until very recently, regular (although not very frequent) contact" has been had between the child and the Petitioner. The Law Guardian submits that Petitioner should be estopped from contesting the issue of paternity, based upon his own alleged "conduct in prior court proceedings," as well as the fact that the final order of custody and visitation was one in which Petitioner was represented by counsel, and that that order was granted on consent, as indicated at the bottom of the first page of that order, which reads that "the parties [have] reached [an] "agreement." The Law Guardian argues that Petitioner is now estopped from collaterally attacking that order by contesting his paternity by way of the instant motion.
This Court agrees with the Respondent, to the effect that the moving papers are insufficient as a matter of law. CPLR Rule 2214 provides that a notice of motion must have supporting affidavits attached to it; an attorney's affidavit is not sufficient, and evidentiary facts, which can be raised only by a person who has personal knowledge of those facts, must be submitted; conclusionary allegations are not sufficient for a party to prevail in any motion. McDougall v McDougall, 129 AD2d 685 (2d Dept 1987); People v Stevens, 129 AD2d 749 (2d Dept 1987) and Bova v Vinciguerra, 139
AD2d 797 (3d Dept 1988). Furthermore, when an attorney submits an affidavit "upon information and belief," as Petitioner's attorney had done here, the information and belief cannot be from a discussion with the party himself.
See also the leading case of Zuckerman v City of New York, 49 NY2d 557 (1980), where, on a summary judgment motion, the only paper submitted in opposition was the affirmation of the opposing attorney. The Court of Appeals found that the opposing affirmation was without evidentiary value, and that "mere conclusions, expres-sions of hope or unsubstantiated allegations or assertions are insufficient." Id. at 562. See also Reitmeister v Reitmeister, 273 AD 652 (1st Dept 1948); and see generally 97 NY Jur 2d, SUMMARY JUDGMENT, §46.
Nevertheless, this Court will address the merits.
Regarding movant's request for a blood grouping test, this [*4]Court notes that such tests, although they may be done, have gone
the way of the phonograph.[FN1] The current method to establish, or disestablish, paternity, is now accomplished by means of a simple swab taken from the inside of a person's mouth with a Q-tip; this
secures all of the DNA necessary in order to submit it for test results and compare it to the other party and the child. Petitioner's request is based upon Family Court Act §532 and CPLR
§3121. However, this Court is prohibited from having any party submit to a DNA test, without first addressing the issue of equitable estoppel, if in fact such issue is raised.
FCA §532 states in part:
No such test shall be ordered, however, upon a
written finding by the court that it is not in
the best interests of the child on the basis of
res judicata, equitable estoppel, or the pre-
sumption of legitimacy of a child born to a
married woman.
See also Lamarr v Klein, 35 AD2d 248 (1st Dept 1970) aff'd 30 NY2d 757 (1972), holding that evidentiary facts must be submitted
in support of a motion, and that where the original affidavit sub-
mitted is that of the party's attorney, without personal knowledge
of the underlying evidentiary facts, that it is not sufficient, since solely conclusory statements are insufficient to defeat such a motion; the burden of proof is upon the party who asserts it; and see Noonan v New York Blood Center, Inc., et al., 269 AD2d 323 (1st Dept 2000); and Ziperman v Frontier Hotel of Las Vegas, 50 AD2d 581 (2d Dept 1975).
This Court's decision is based upon a doctrine that has not been espoused by any party to this motion - - the doctrine of
judicial estoppel. Simply stated, that doctrine prohibits a party from taking inconsistent positions, where he obtained a favorable judgment and subsequently takes an inconsistent position simply because his interests have changed. See, for instance, Crespo v Crespo, 309 AD2d 727 (2d Dept 2003), where a husband obtained a judgment of divorce in his favor, and subsequently was prohibited from taking an inconsistent position (that his maintenance obligation was for a specific duration, rather than lifetime); Cafferty v Thompson, 223 AD2d 99 (3d Dept 1996), appeal den'd 88 NY2d 815 (1996), where a bankrupt party [*5]did not list a certain malpractice claim against his former attorneys on his schedule of
assets in the bankruptcy proceeding, where he was then discharged from bankruptcy, and where he then asserted two malpractice actions against the attorneys. It was held that due to his failure to
include the claim in the schedule of assets, he was precluded from pursuing them, and was barred by judicial estoppel.
Likewise, in D & L Holdings, LLC v RCG Goldman Co., 287 AD2d 65 (1st Dept 2001), appeal den'd 97 NY2d 611 (2002), the doctrine of judicial estoppel was used to prohibit a party from benefiting from taking one legal position in a bankruptcy matter, and
thereafter taking a contrary position before the Supreme Court. The Appellate Division stated, at page 71, that the rule of judicial estoppel "has, properly, been applied as well to court rulings that are not denominated as judgments'," citing All Terrain Properties, Inc. v Hoy, 265 AD2d 87 (1st Dept 2000) and Maas v Cornell University, 253 AD2d 1 (3d Dept 1999), aff'd 94 NY2d 87 (1999).
The doctrine of judicial estoppel has also been used in Matter of Glatt and Harvey v Town of Williamstown, 11 AD3d 1017 (4th Dept 2004); In re Estate of Sbarra, 17 AD3d 975 (3d Dept 2005); Festinger v Edrich, 32 AD3d 412 (2d Dept 2006); Evergreen Bank, N.A. v Dashnaw, 262 AD2d 737 (3d Dept 1999) and Clifton Country Road Associates v Vinciguerra, 252 AD2d 792 (3d Dept 1998).
Lastly, in a very recent matter, the Supreme Court used this doctrine in Mahoney-Buntzman v Buntzman, 13 Misc 3d 1216A (Supreme
Ct of New York, Westchester Cty 2006), which held that a party cannot state one position in his tax return (that a substantial settlement received by him, after the parties' marriage, was marital property) and thereafter assume a contrary position with
respect to a subsequent Supreme Court action (where he claimed that the same settlement was separate property).
In the matter at bar, it is uncontroverted that Petitioner submitted a petition for paternity, dated July 27, 2006 and verified July 31, 2006. That petition states, under oath, that this Petitioner had sexual intercourse with the Respondent from February 1996 through April 2000, as a result of which Respondent became pregnant; that he is the Father of the child in this matter, and that he has "acknowledged the paternity in writing." The prayer for relief in that petition requests, among other things, a declaration of paternity.
Furthermore, it is uncontroverted that there is an order issued by this Court dated November 18, 1999, in which the Petitioner in the matter at bar appeared and was represented by counsel, and reached an agreement whereby he, as the Father, [*6]"shall have visitation as agreed upon between the parties." His failure to contest paternity at that time also precludes him from raising the issue now. See especially Cafferty v Thompson, supra.
In the circumstances, the final order of custody and visita-tion, as well as the petition for paternity, fulfill all of the requirements for judicial estoppel. The Petitioner cannot request relief to be adjudged as the Father, as recently as this past July 2006, and now take a contrary position in the matter at bar. The order from 1999 is a "judgment" in accordance with the applicable case law (D&L Holdings, LLC v RCG Goldman Co., supra), and the paternity petition is fatally defective to the Petitioner's instant attempt to raise the issue of equitable estoppel. This is especially so where the Petitioner has specifically admitted that he previously acknowledged his paternity in writing and where he now alleges (by hearsay through his attorney) that his acknowledgment is a forgery, and where the Petitioner has filed no reply papers denying any of the documentation set forth by the Respondent and the Law Guardian.
With respect to Petitioner's request for the appointment of an examiner of questioned documents ("handwriting expert"), in order to attempt to attack the Petitioner's alleged signature on the acknowledgment of paternity, that portion of the relief sought is denied as moot. Likewise, all other prayers for relief, not specifically addressed in this decision and order, are likewise denied as moot.
This constitutes the Findings, Decision and Order of the Court.
Dated: Westbury, New York
December 21, 2006
TO:
 
[*7]
Footnotes

Footnote 1: "The former blood grouping tests could not prove paternity; at most, they could only exclude paternity, and then only in a relatively small number of cases." McKinney's Consolidated Laws of New York Annotated, vol. 29A Judiciary Law §532, 2003 Commentary by Prof. Merril Sobie.