JAMES METZGER, an Infant, by CATHERINE METZGER, His Guardian ad Litem, et al., Plaintiffs, *v.* DELL PUBLISHING Co., INC., Defendant.

Supreme Court, Trial Term, New York County, January 17, 1955.

*Thomas P. Nevin* for plaintiffs.

*Joseph F. Sharp* for defendant.

WALTER, J. In the January, 1953, issue of its magazine *Front Page Detective* defendant published an article, or story, entitled " Gang-Boy ", and in connection therewith it published several photographs, one of which the jury has found is a photograph of the plaintiffs herein.

In this action for damages, plaintiffs allege an unauthorized use of their portrait for the purposes of trade, which is an allegation of a violation of sections 50 and 51 of the Civil Rights Law; but they also alleged that as a result of such use plaintiffs have been held up to public ridicule, disgrace and humiliation and have been caused to endure mental suffering and anguish, which is an allegation of a violation of their common-law right not to be defamed.

The article, or story, was inspired by, and in a sense is based upon, the arrest of a young man named Robert Moore on a charge of having participated in a beating of two men, but it is not in any sense a news report of that beating or of that arrest. It purports to record what a free lance reporter saw and heard in the course of two weeks spent by that reporter in the vicinity of the beating in an effort to learn why the beating had occurred and why Moore had become involved in it; but it does not mention the beating or the arrest as a news event and it carefully conceals Moore's identity under the obviously fictitious name of " Blackie ".

A fair summary of what the article sets forth as the reporter's conclusions from what he saw and heard is that in a more or less generally described section of Brooklyn youths who have little to do in their spare time have a habit of standing around on the streets, looking longingly through tavern windows at the light, warmth, entertainment, and companionship to be seen therein, and of playing cards or throwing dice in hallways, and have organized themselves into lawless gangs, and in that way get caught in the meshes of the law.

While not a news report, the article thus fairly may be said to be an attempt to portray the existence of a condition which

indisputably is a subject of legitimate public interest. Somewhat differently phrased, the article may be described as a survey of a social condition.

As such, the article is comparable to the article on boxing which was involved in *Oma* v. *Hillman Periodicals* (281 App. Div. 240); but the vast difference between that case and this is that the plaintiff in that case was a professional boxer (i.e., one who by his own acts, not only had brought himself into the public eye and made himself a public figure, but, also, had made himself a legitimate object of comment in connection with a portrayal of the particular social condition [professional boxing] with which that article dealt and which it attempted to survey), whereas these plaintiffs are not shown to have, or ever to have had, any connection with gangs of any sort, or ever to have been caught in the meshes of the law, or ever to have made a practice of standing on the streets, or looking through tavern windows, or of playing cards or throwing dice in hallways. They were simply dragged into the article by the purely fortuitous circumstance that at the particular moment when this reporter (author of the article) appeared in their neighborhoood in search of "local color" they happened to be standing together in front of a printing establishment where one of them was employed, and next door to the residence of one of them, engaging in the innocent pastime of discussing the then current "world series"; and it was a picture of the three of them so standing together which defendant used in connection with an article on "gangs".

So far as these plaintiffs are concerned the article is fiction pure and simple, and nothing but fiction.

The statute in question seems to be universally regarded as a recognition and protection of the "right of privacy"; and I think it difficult to conceive of a more flagrant violation of that right than is here presented; and if the statutes do not cover such a case as this, it might just as well be repealed as a wholly ineffectual means of protecting the right it is supposed to create and recognize. The fact that it is legitimate to discuss the existence of gangs and gangsters does not make it legitimate to drag these plaintiffs into the discussion.

Assuming in defendant's favor that these youths (under 21 years of age at the time) orally consented to a taking of their picture, there is nothing to support the idea that they consented to a use of their picture in connection with this article or to any publication whatever of the picture so taken. Further-

more, under the statute an oral consent is not enough — a written consent is thereby expressly required.

I think there plainly was a violation of the statute.

There is, however, no evidence that plaintiffs were in fact actually damaged.

Some damage doubtless is to be presumed or inferred from the mere fact of a statutorily prohibited use of a photograph, just as some damage is presumed or inferred from the publication of a libel (*Sanderson* v. *Caldwell,* 45 N. Y. 398, 403; *Byam* v. *Collins,* 111 N. Y. 143, 150; *Holmes* v. *Jones,* 147 N. Y. 59, 66; *Morrison* v. *Smith,* 177 N. Y. 366, 368; *Corrigan* v. *Bobbs-Merrill Co.,* 228 N. Y. 58, 65; Seelman on Libel & Slander, p. 323); but the only explanation of the jury's verdict of $9,000 ($3,000 for each of the three plaintiffs) seems to me to be the assumption that the jury construed the article and the photographs together as asserting that plaintiffs are members of a gang of law-breaking youths (and hence as asserting something which is false and defamatory, or, in other words, as constituting a libel) and that because of the utter absence of any possible justification for such an assertion they concluded that defendant had acted with knowledge that its act was wrong and with such malice as entitled the jury to award punitive or exemplary damages.

I cannot say that in either of those respects the jury was wrong upon the facts; and if it be suggested that in so finding the jury went contrary to my charge that this is not an action for libel and that they were not to consider whether the reputations of these plaintiffs were degraded or enhanced by the publication, the answer is: first, that that charge was erroneous; second, that, as the error was in giving at defendant's request a charge which was more favorable to defendant than the defendant was entitled to have given, the error is not one which affords ground for setting aside a verdict for plaintiffs; and, third, that the jury have cancelled out my error by finding in accordance with the way I should have charged.

The reason I think it was error to charge that the action is not for libel and that damage to reputations should not be considered is this:

The single act charged in the complaint as the wrong done to plaintiffs is the publication of their pictures in connection with this article. It is that single act which constitutes plaintiffs' one and only cause of action, and it constitutes one single cause of action whether the act was wrongful because it was a violation of section 51 of the Civil Rights Law or because it was a viola-

tion of plaintiffs' common-law right not to be defamed, or both.

Different legal theories or different grounds of liability do not make different causes of action (see the cases I collected on that point in *Gettinger* v. *Equitable Life Assur. Soc.*, 80 N. Y. S. 2d 661, 664, 665; and *Herold* v. *Wills*, 119 N. Y. S. 2d 525, 529); and it was incumbent upon plaintiffs to assert in this one action all possible grounds of liability. They could not in one action recover solely the damage which ensued from an unauthorized use of their photograph and then maintain a second action to recover the damage resulting from the implied assertion that they were gangsters. All damage resulting from the publication of their photograph in connection with the article in question must be recovered in this action, regardless of the legal theory upon which the right of recovery is rested or the particular law which defendant violated in publishing plaintiffs' photograph in connection with this article.

Furthermore, the complaint herein specifically alleges, not only an unauthorized use of their picture, but, also, that by reason of such use they were held up to public ridicule, disgrace and humiliation; and to make the action one for libel it was not necessary for the complaint to go further and pin upon itself the label " action for libel ".

In short summary, therefore, the situation is that plaintiffs have alleged a libel, as well as an unauthorized use of their picture for purposes of trade, and upon sufficient evidence the jury has found that defendant knowingly and maliciously published of and concerning plaintiffs something that was false and defamatory, and for that act has awarded damages to plaintiffs; and no fault in law can be found with that.

But in my opinion $9,000 is excessive, even for a verdict for libel so malicious as to justify punitive or exemplary damages; and solely for that reason the motion to set aside the verdict will be granted and a new trial ordered unless plaintiffs will stipulate to reduce the verdict to $1,700 for each plaintiff (a total of $5,100). If plaintiffs so stipulate, the motion to set aside the verdict will be denied.

This public confession of my error has been induced by the thought that, as there seems to be no reported decision discussing the relation of libel and an unauthorized use of a person's photograph, my analysis of the subject may be helpful in other cases. The confession is not pleasant and I find some comfort in the heretofore publicized experience of a distinguished English judge in 1872.

In the course of an argument before him, Baron Bramwell made some remarks which led counsel to refer to an earlier decision of Baron Bramwell which counsel thought was quite different from what Baron Bramwell had just said, and Baron Bramwell responded " The matter does not appear to me now as it appears to have appeared to me then " (*Andrews* v. *Styrap*, 26 Law Times Reports, 704, 706, July 6, 1872).