Keating, J.
Again before us is this appeal by the defendant — author, Milton Shapiro, and his publisher, the defendant Julian Messner, Inc., from an order of the Appellate Division (First Department) unanimously affirming a judgment of the Supreme Court (Markowitz, J.) enjoining the publication and dissemination of the book “ The Warren Spahn Story” and awarding the plaintiff $10,000 in damages.
On July 7, 1967, in conformance with the mandate of the Supreme Court of the United States, we vacated our prior order of affirmance (18 N Y 2d 324) and ordered that the case be set down for reargument in light of Time, Inc. v. Hill (385 U. S. 374).
Upon reconsideration of the appeal, we adhere to our original determination and again affirm the order appealed from.
Little purpose would be served here by repeating the discussion of sections 50 and 51 of the Civil Eights Law found in our original opinion or the extensive discussion of the area found in the Supreme Court opinion of Time, Inc. v. Hill (supra). The difficulty which the Supreme Court found with our construction of sections 50 and 51 was the intimation in our original opinion in this case that the standards outlined by the court in New York Times Co. v. Sullivan (376 U. S. 254) were applicable only to actions brought under the statute by public officials with regard to publications about their official conduct. Since this ease involved neither a public official nor a publication relating to official conduct we did not consider the merits of the appellants’ arguments under New York Times Co. v. Sullivan (supra).
*127 The remand of this appeal by the Supreme Court gives us an opportunity to construe the statute so as to preserve its constitutionality (People v. Epton, 19 N Y 2d 496, cert. den. 390 U. S. 29) and to review the appeal in light of the standards set forth in New York Times Co. v. Sullivan (supra) and Time, Inc. v. Hill (supra).
We hold in conformity with our policy of construing sections 50 and 51 so as to fully protect free speech, that, before recovery by a public figure may be had for an unauthorized presentation of his life, it must be shown, in addition to the other requirements of the statute, that the presentation is infected with material and substantial falsification and that the work was published with knowledge of such falsification or with a reckless disregard for the truth?)
An examination of the undisputed findings of fact below as well as the defendants’ own admission that “ [i]n writing this biography, the author used the literary techniques of invented dialogue, imaginary incidents, and attributed thoughts and feelings ” (brief for appellants, p. 10) clearly indicates that the test of New York Times Co. v. Sullivan (supra) and Time, Inc. v. Hill {supra) has been met here.
The Trial Judge found gross errors of fact and “ all-pervasive distortions, inaccuracies, invented dialogue, and the narration of happenings out of context ” (43 Misc 2d 219, 230). These findings were unanimously affirmed by the Appellate Division The court wrote: “ [I] t is conceded that use was made of imaginary incidents, manufactured dialogue and a manipulated chronology. In short, defendants made no effort and had no intention to follow the facts concerning plaintiff’s life, except in broad outline and to the extent that the facts readily supplied a dramatic portrayal attractive to the juvenile reader. This liberty * * * was exercised with respect to plaintiff’s childhood, his relationship with his father, the courtship of his wife, important events during their marriage, and his military experience. ” (23 A D 2d 216, 219.)
Exactly how it may be argued that the “ all-pervasive ” use of imaginary incidents—incidents which the author knew did not take place — invented dialogue — dialogue which the author knew had never occurred—and attributed thoughts and feelings *128 — thoughts and feelings which were likewise the figment of the author’s imagination—can he said not to constitute knowing falsity is not made clear by the defendants. Indeed, the arguments made here are, in essence, not a denial of knowing falsity but a justification for it.
Thus the defendants argue that the literary techniques used in the instant biography are customary for children’s books. To quote from their brief (p. 11): “ The use of manufactured dialogue was characterized as ‘ mandatory ’ by a noted critic, teacher and author of children’s books. She explained that the dialogue is ‘ created, and based on probable facts and possible dialogue, which the biographer, through his association with his subject, through the vast amount of research that is necessary, can assume might have happened. It’s not a falsification in that sense of the word at all ’. Basically a juvenile biography ‘ has to be a lively story to catch a youngster away from television and all other distractions. * * * You cannot make it straight narrative. It can’t list a great many facts or details which you can find in an encyclopedia or “ Who’s Who ”.’ ”
Even if we were to accept this explanation as a defense to this kind of action (cf. note, 67 Col. L. Rev. 926, 942), the defendants could not succeed here. The author of ‘ ‘ The Warren Spahn Story ’ ’ had virtually no association with the subject. He admitted that he never interviewed Mr. Spahn, any member of his family, or any baseball player who knew Spahn. Moreover, the author did not even attempt to obtain information from the Milwaukee Braves, the team for which Mr. Spahn toiled for almost two decades. The extent of Mr. Shapiro’s “ vast amount of research ” in the case at bar amounted, primarily, to nothing more than newspaper and magazine clippings, the authenticity of which the author rarely, if ever, attempted to check out.*
*129 To hold that this research effort entitles the defendants to publish the kind of knowing fictionalization presented here would amount to granting a literary license which is not only unnecessary to the protection of free speech but destructive of an individual’s right—albeit a limited one in the case of a public figure — to be free of the commercial exploitation of his name and personality.
That the defendants realize the weakness of their position is evidenced by the stress which they place upon what must be regarded as a purely technical defect—the failure of the plaintiff to allege in his complaint knowing falsity or reckless disregard for the truth. In addition to the fact that a motion was made to conform the pleading to the proof, the defendants do not allege any prejudice as a result of the defective pleading. Indeed, the defendants relied on New York Times Co. v. Sullivan in the trial court and do not allege that they were denied an opportunity to tailor their proof to that defense. Under these circumstances the defective pleading does not warrant reversal (Himoff Ind. Corp. v. Srybnik, 19 N Y 2d 273, 279; Diemer v. Diemer, 8 N Y 2d 206; see, also, Van Gaasbeck v. Webatuck Cent. School Dist., 21 N Y 2d 239, decided herewith).
For the reasons stated the order appealed from should be affirmed, with costs.

 Even when some effort was made to cheek out these sources, the results were ignored if they interfered with the fictionalization of Mr. Spahn’s life. Thus, the author was informed by the Department of the Army that Mr. Spahn did not earn the Bronze Star in combat during World War II, although he was informed that the records were not absolutely accurate and that, if Mr. Spahn said he won the Bronze Star, it was likely that he did. Mr. Shapiro depicted Mr. Spahn as a Bronze Star winner even though he admitted that Mr, Spahn never stated that he had won the Bronze Star nor had he ever been quoted as saying so.