OPINION OF THE COURT
Per Curiam.
Order entered September 18, 1984 modified, on the law and on the facts, by granting that branch of defendant’s motion as sought summary judgment dismissing the seventh and eighth causes of action of the amended complaint; as so modified, order unanimously affirmed, with $10 costs to defendant-appellant.
The action, sounding in defamation and invasion of privacy, arises from the publication, in the Sunday magazine supplement of the April 26, 1981 edition of the Daily News (News), of an article titled "The Youngest Professionals — If You Break the Law — And You’re Young Enough — The Cops Can’t Touch You.” The article is about the allegedly rampant involvement of city youths in drug trafficking and the problems encountered by law enforcement agencies in prosecuting them. Appearing opposite the first page of the story is an illustration depicting two boys engaged in what appears to be a street sale of drugs — the youths are shown exchanging a sum of cash and a glassine envelope. The illustration was sold to the News by a free-lance artist named Leland Neff (Neff). Unbeknownst to defendant, the "image for the drawing” was based, at least in part, on a series of posed photographs taken by Neff of the infant plaintiffs. Undisputedly, no written consent was ever sought or obtained for the use of plaintiffs’ photographs or the illustration derived therefrom.
It is plaintiffs’ contention that the illustration appearing in the article bore an "exact similarity” to the photographs taken of them by Neff, and that by publishing the illustration without written consent defendant falsely portrayed the infant plaintiffs as drug dealers, thereby injuring their reputations and invading their privacy rights. The complaint, as amended, contains eight causes of action. The first four causes sound in defamation; the fifth and sixth are derivative claims for medical expenses; and the last two causes are to recover for invasion of privacy under Civil Rights Law §§ 50 and 51. *844 On each of the pleaded causes of action, plaintiffs seek substantial compensatory and exemplary damages.[1]
After joinder of issue and completion of discovery, defendant moved for summary judgment dismissing the complaint. In support of the motion, defendant submitted, inter alia, the affidavit of one of its art designers, Robert Clive (Clive), who at the time of publication was the art director of the newspaper’s Sunday magazine supplement. Clive states that he decided to spotlight the story with a picture of children engaging in a drug transaction in order to more effectively "convey the seriousness of the topic [of juvenile drug sales] and bring attention to the article.” Concerned about the potential legal hazards attendant upon the depiction of "actual, recognizable individuals” in such circumstances, the art director thought it prudent to use an illustration or "editorial drawing” rather than a photograph. To this end, the art director hired Neff, an experienced professional artist whose illustrations had twice previously been published by the News. The artist was instructed, upon hiring, that due to the sensitive subject matter of the story, the drawing should not "represent an identifiable individual or real situation,” but rather should depict "typical or average but anonymous youngsters.” The illustration was prepared and submitted by the artist within the allotted deadline, and was reviewed prior to publication by both Clive and a managing editor. Concededly, no one on the newspaper’s staff inquired as to the identity of the characters appearing in the illustration or asked the artist whether he had used live models in formulating the desired scene, since it was presumed that the drawing was "a creation of the artist’s imagination.” Thus, defendant did not learn that a posed photograph was used until after commencement of this lawsuit.
In opposition to defendant’s motion for summary judgment, plaintiffs submitted, inter alia, an attorney’s affirmation, in which it is urged that defendant acted in a "grossly irresponsible” manner and with "actual malice” by failing to take "reasonable precautions” to determine whether the youths portrayed in the published illustration were "real persons.” Also included in plaintiffs’ opposition papers are several photographs of the infant plaintiffs tendered to show the physical *845 resemblance between them and the boys shown in the drawing.[2]
Special Term granted defendant’s motion for summary judgment dismissing the libel actions but denied the motion as to the privacy causes of action (125 Misc 2d 302). Both sides appeal, plaintiffs from the dismissal of their libel claims and defendant from the denial of its motion for summary judgment dismissing the privacy actions. We now modify, by dismissing plaintiffs’ privacy claims, and otherwise affirm.
Treating first the dismissal of the libel actions, there can be little dispute regarding the proper standard to be applied in determining defendant’s liability for the allegedly defamatory picture. Although the infant plaintiffs are "private” persons, the subject matter of the article in issue — the involvement of juveniles in the city’s wide-reaching drug distribution network —is unquestionably a matter "within the sphere of legitimate public concern” (Chapadeau v Utica Observer-Dispatch, 38 NY2d 196, 199). Accordingly, defendant may not properly be cast in damages for defamation unless it is proven that it acted in a "grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties” (supra, at p 199).
No such showing of "gross irresponsibility” was made by plaintiffs below, nor did plaintiffs raise a triable issue in this regard. As the court below properly recognized, defendant simply had no reasons to doubt that Neff, an experienced professional illustrator, had, in compliance with defendant’s instructions, rendered a wholly "fictionalized” drawing, depicting "hypothetical”, not living persons. Thus, defendant cannot be faulted for making no further inquiry of the artist concerning the true identity, if any of the characters depicted in the drawing or of the possible sources of his ideas or inspiration. Nor can defendant be held accountable on a theory of respondeat superior for the actions of the artist, since he was not an employee or agent, but a free lancer who was paid only for illustrations which defendant accepted and published (Kara *846 duman v Newsday, Inc., 51 NY2d 531, 533; Ortiz v Valdescastilla, 102 AD2d 513, 521, appeal withdrawn 63 NY2d 773).
Courts "must not be reluctant to apply the ordinary rules governing summary judgment in libel cases such as this, since '[t]he threat of being put to the defense of a lawsuit * * * may be as chilling to the exercise of First Amendment freedoms as fear of the outcome of the lawsuit itself ” (Karaduman v Newsday, Inc., 51 NY2d 531, 545, supra, citing Washington Post Co. v Keogh, 365 F2d 965, 968, cert denied 385 US 1011). Since defendant was not shown to have acted in a grossly irresponsible manner in publishing the challenged illustration, Special Term correctly dismissed plaintiffs’ libel claims.
Turning now to the privacy causes of action, Civil Rights Law §§ 50 and 51 prohibit the use "for advertising purposes, or for the purposes of trade” of the name, portrait or picture of a living person unless that person’s written consent has first been obtained.[3] While the terms "trade” and "advertising” are not expressly defined in the statute, the courts, according due deference to constitutional concerns for freedom of free speech and free press, have consistently held that these terms should not apply to publications concerning newsworthy events or matters of public interest (Stephano v News Group Pub., 64 NY2d 174). An exception to the newsworthy privilege is recognized, however, where it is shown that there is no real relationship between the use and the subject matter of the article or that the use was infected with substantial fictionalization or falsification (see, Lerman v Flynt Distrib. Co., 745 F2d 123 [2d Cir 1984]; Spahn v Julian Messner, Inc., 18 NY2d 324, on rearg 21 NY2d 124, appeal dismissed 393 US 1046; *847 Davis v High Socy. Mag., 90 AD2d 374, 381, appeal dismissed 58 NY2d 1115). Even assuming, without deciding, that the use of the illustration contained "substantial fictionalization or falsification” and thus was one for trade purposes within the meaning of section 51, we nonetheless conclude that plaintiffs, having failed to make an evidentiary showing of requisite fault on the part of defendant, are not entitled to recover damages under the statute. Given the close connection between privacy and defamation claims, particularly in the area of 1st Amendment concerns, it is clear that a heightened degree of fault must be shown before section 51 sanctions can be imposed against a media defendant for a publication about a newsworthy event or a matter of public interest (Time, Inc. v Hill, 385 US 374 [actual malice standard applied]; Spahn v Julian Messner, Inc., 21 NY2d 124, supra [same]). Although there is considerable uncertainty, under Federal constitutional law, as to the appropriate standard of care to be applied in privacy cases where the plaintiff is neither a public official nor a public figure (compare, Time, Inc. v Hill, supra, with Gertz v Robert Welch, Inc., 418 US 323; see generally, Sack, Libel, Slander, and Related Problems § IX.3.2, at 399-401), the constitutional issue need not be addressed in this case, since under any standard presently recognized in this State — actual malice or gross irresponsibility — plaintiffs have failed to make an evidentiary showing sufficient to justify a trial on the fault issue against defendant. Thus, summary judgment should have been granted to defendant dismissing the privacy causes of action, and we modify accordingly.
Hughes and Parness, JJ., concur.

. Plaintiffs sought court leave to amend the complaint to include a negligence cause of action against the defendant newspaper and to add as a party defendant the artist, Neff. Plaintiffs’ motion was denied by order of Wolin, J., entered April 14,1983, from which no appeal was taken.

. Were we not granting defendant summary judgment dismissing the entire complaint because of 1st Amendment considerations, explained more fully, infra, on the record before us the facts would have been sufficient to require jury resolution of whether the illustration was "of and concerning” (Pollnow v Poughkeepsie Newspapers, 107 AD2d 10, 17, n 5 [Titone, J.]) or a "recognizable likeness” of the infant plaintiffs (Cohen v Herbal Concepts, 63 NY2d 379, 384, affg 100 AD2d 175).

. Civil Rights Law § 50 reads as follows: "A person, firm or corporation that uses for advertising purposes, or for the purposes of trade, the name, portrait or picture of any living person without having first obtained the written consent of such person, or if a minor of his or her parent or guardian, is guilty of a misdemeanor.”
Section 51 provides in relevant part: "Any person whose name, portrait or picture is used within this state for advertising purposes or for the purposes of trade without the written consent first obtained as above provided may maintain an equitable action in the supreme court of this state against the person, firm or corporation so using his name, portrait or picture, to prevent and restrain the use thereof; and may also sue and recover damages for any injuries sustained by reason of such use and if the defendant shall have knowingly used such person’s name, portrait or picture in such manner as is forbidden or declared to be unlawful by section fifty of this article, the jury, in its discretion, may award exemplary damages.” Because the provisions of section 50 are incorporated in section 51, we will hereinafter refer only to section 51.