**Jamie MESSENGER, an infant under the age of eighteen, by her mother and "next friend" Donna MESSENGER, Plaintiff,**

v.

**GRUNER + JAHR USA PUBLISHING, et ano., Defendants.**

**No. 97 Civ. 0136(LAK).**

United States District Court, S.D. New York.

Feb. 23, 1998.

As Amended March 13, 1998.

Arthur M. Lieberman, Mitchell A. Stein, Marcella Ballard, Lieberman & Nowak, LLP, New York City, for Plaintiff.

Robert G. Sugarman, Marcia S. Cohen, Jennifer Sclar, Weil, Gotshal & Manges, LLP, New York City, for Defendants.

## MEMORANDUM OPINION

KAPLAN, District Judge.

Jamie Messenger is a Florida teenager and aspiring fashion model who posed for photographs for use in one of defendant's magazines, *YM, Young and Modern.* The photographs were used to illustrate a love and sexual advice column that is a regular feature of the magazine. The column in question contained what was presented as a letter from a teenager, identified only as "Mortified," which sought advice in consequence of her having had sex with three boys and then having been ostracized by her peers. The purported letter was followed by the editor's advice to "Mortified." The column was illustrated with three photographs of Messenger in various stages of undress and in poses suggestive of events related in the purported letter. The page prominently featured a headline, or "pull quote," that read "I got trashed and had sex with three guys." The gravamen of the case is plaintiff's contention that the defendants falsely created the impression that Jamie Messenger was the author of the letter and had had sex with three guys. Plaintiff complains also that defendants tricked Messenger as to the use that would be made of the photographs

for which she posed and that the purported letter in fact is a work of fiction.

Plaintiff's remaining claim [1] is that the use of her photograph violated Sections 50 and 51 of the New York Civil Rights Law, which forbids the use of one's name, portrait or picture for trade or advertising purposes absent a signed release and creates a private cause of action for damages for violations. In order to place the defendants' summary judgment motion in perspective, it is useful to trace the history of the statute.

In *Roberson v. Rochester Folding Box Co.*,[2] the New York Court of Appeals broadly declared that there is no common law right of privacy in the State of New York and denied recovery to an infant plaintiff whose photograph had been widely distributed by the defendant in order to advertise its baking flour. The Legislature promptly adopted the statute here in question to overturn the holding of *Roberson* by creating a cause of action for the commercial or trade use of one's name or picture without one's consent.[3]

The state courts' subsequent application of the statute has been sensitive to the risk that too broad a construction could interfere with free and open discussion of matters of public concern.[4] They have held that publications concerning matters of public interest—a concept applied most expansively [5]—are not trade or advertising uses. More specifically, the state courts repeatedly have said that the use of a photograph to illustrate an article on a topic of public interest is not actionable "unless [the photograph] has no real relationship to the article ... or unless the article is an advertisement in disguise." [6] Indeed, as recently as 1990, the New York Court of Appeals held in *Finger v. Omni Publications Int'l, Ltd.*,[7] that the use of a photograph of a large family to illustrate a story on fertility and new fertilization techniques was not actionable despite the fact that the children in the photograph were not conceived by such methods.

On the other hand, the New York courts have not disregarded the interests of persons victimized by falsehood. In the leading case of *Spahn v. Julian Messner, Inc.*,[8] the New York Court of Appeals held that a star professional athlete would be entitled to recover for the use of his name in an unauthorized biography to the extent that the defendant culpably falsified or fictionalized aspects of his life. More recently, the Appellate Term of the New York Supreme Court in *Fils-*

---

**1.** The Court previously dismissed claims for libel, intentional and negligent infliction of emotional distress, and negligence.

**2.** 171 N.Y. 538, 64 N.E. 442 (1902).

**3.** Despite some indications that the New York Court of Appeals would retreat from *Roberson* and recognize a common law right of privacy, *see Galella v. Onassis*, 353 F.Supp. 196, 227–30 (1972), *mod. on other grounds*, 487 F.2d 986 (2d Cir.1973), it steadfastly has declined to do so. *E.g., Howell v. New York Post Co.*, 81 N.Y.2d 115, 123, 596 N.Y.S.2d 350, 354, 612 N.E.2d 699 (1993).

**4.** *See, e.g., Arrington v. New York Times Co.*, 55 N.Y.2d 433, 440, 449 N.Y.S.2d 941, 944, 434 N.E.2d 1319 (1982).

**5.** *See, e.g., Weber v. Multimedia Ent., Inc.*, No. 97 Civ. 0682(PKL), 1998 WL 2550, *3 & n. 1 (S.D.N.Y. Jan.5, 1998) (teenage prostitution); *Creel v. Crown Publishers, Inc.*, 115 A.D.2d 414, 496 N.Y.S.2d 219 (1st Dept.1985) (plaintiff's nude photograph taken at a nude beach and used in guide to nude beaches considered newsworthy); *Davis v. High Society Magazine, Inc.*, 90 A.D.2d 374, 457 N.Y.S.2d 308 (2d Dept.1982)

(picture of a well-known female boxer posed nude in a boxing scene "a newsworthy event for a great many people"); *Molony v. Boy Comics Publishers*, 277 App.Div. 166, 98 N.Y.S.2d 119 (1st Dept.1950) (comic book portrayal of plaintiff as a hero in a national disaster newsworthy); *Lahiri v. Daily Mirror*, 162 Misc. 776, 295 N.Y.S. 382 (Sup.Ct.N.Y.Co.1937) (demonstration of Hindu rope trick found newsworthy).

**6.** *Murray v. New York Magazine Co.*, 27 N.Y.2d 406, 409, 318 N.Y.S.2d 474, 476, 267 N.E.2d 256 (1971) (quoting *Dallesandro v. Henry Holt & Co.*, 4 A.D.2d 470, 471, 166 N.Y.S.2d 805, 806 (1st Dept.1957)), *appeal dismissed*, 7 N.Y.2d 735, 193 N.Y.S.2d 635, 162 N.E.2d 726 (1959). *See also Finger v. Omni Publications Int'l, Ltd.*, 77 N.Y.2d 138, 142, 564 N.Y.S.2d 1014, 1016, 566 N.E.2d 141 (1990); *Arrington*, 55 N.Y.2d at 440, 449 N.Y.S.2d at 944.

**7.** 77 N.Y.2d 138, 564 N.Y.S.2d 1014, 566 N.E.2d 141 (1990).

**8.** 21 N.Y.2d 124, 286 N.Y.S.2d 832, 233 N.E.2d 840 (1967), *appeal dismissed*, 393 U.S. 1046, 89 S.Ct. 676, 21 L.Ed.2d 600 (1969).

*Aime v. Enlightenment Press, Inc.,*[9] applied the *Spahn* rule to affirm the denial of a motion for summary judgment dismissing a claim based on the allegedly misleading use of a photograph to illustrate an article on a topic of conceded public interest—the use of a teenager's photograph, taken for other purposes, with an article on child pornography in circumstances that arguably implied that the teenager had been involved in such activities.

These somewhat divergent lines of authority frame the dispute now before the Court. Defendants argue that teenage sex is a matter of public interest and that Messenger's photographs—which, they contend, would have been understood by readers to be photographs of a model rather than of the author of the purported letter from "Mortified"—were reasonably related to their column. Their position therefore is that their actions are protected by the newsworthiness privilege because there was no falsification and, in any case, because *Spahn* and *Fils–Aime* no longer reflect the law of New York. The latter contention rests on the fact that *Finger* and other cases have summarized the newsworthiness exception to Sections 50 and 51 without referring to any limitation based on falsification. Plaintiff, on the other hand, contends that the article in question would have been understood by the relevant audience—allegedly teenagers—as implying that Messenger was "Mortified" and that such false and misleading suggestions are actionable, assuming the requisite culpability is established, in view of *Spahn* and its progeny.

■ One matter is readily disposed of. Plaintiff does not, and in any case could not, seriously dispute that the subject of the column at issue—teenage sex and its consequences—falls within the broad reach of the newsworthiness exception to the statute.[10] Nor does she deny that the use of photographs of a teenager of suitable age and gender is appropriate to illustrate such a column provided that the individual so depicted in fact had the experiences described or, if not, that the photograph is presented with a disclaimer or other clear indication that the individual is a model and not personally the subject of the column. Hence, this Court holds that the subject of the column was a matter of public interest and that the use of the photographs was reasonably related to it. Defendants' motion therefore turns on whether the column was false or fictionalized—that is, whether it implied that "Mortified's" purported letter described Messenger's personal experiences—and, if so, whether defendants are correct in arguing that the fictionalization exception to the newsworthiness privilege does not survive in New York law.

The first question is not troublesome. The fundamental issue is whether the publication created the impression that Messenger had had the experiences that were the subject of the column, a matter than turns on the interpretation that would be given to the column by readers. The problem is analogous to that presented in libel cases where the question is whether the accused publication is defamatory, and the mode of analysis is the same. The Court initially must determine as a matter of law whether readers reasonably could construe the article in the manner alleged by the plaintiff. If they could, the issue whether they actually did so is for the trier of fact.[11] Although the defendants have

9. *133 Misc.2d 559, 507 N.Y.S.2d 947* (App.T.1st Dept.1986).

10. *E.g., Weber,* 1998 WL 2550, *3 & n. 1 (teenage prostitution matter of public interest).

11. See *Sutton v. Hearst Corp.,* 277 A.D. 155, 156–57, 98 N.Y.S.2d 233, 234–35 (1st Dept.1950) (trier of fact must determine whether article was fictionalized); *Marcinkus v. NAL Publishing Inc.,* 138 Misc.2d 256, 522 N.Y.S.2d 1009 (Sup.Ct. N.Y.Co.1987) (denying summary judgment because "[i]t cannot be said, as a matter of law, that ... [the] readers will have no basis for believing that the work is 'anything but fiction'

and that there is no connection between the [character in the book] and plaintiff"); cf. *Hicks v. Casablanca Records,* 464 F.Supp. 426, 433 (S.D.N.Y.1978) (denying preliminary injunction under Section 51 where fictionalization evident to reader); *Goldberg v. Ideal Publishing Corp.,* 210 N.Y.S.2d 928 (Sup.Ct.N.Y.Co.1960) (upholding complaint where "it appears upon the face of the complaint that the role of the plaintiff, as depicted and represented in the article, in relation to its subject matter, has been wholly fictionalized"). The corresponding libel analysis is described in *Levin v. McPhee,* 917 F.Supp. 230, 236 (S.D.N.Y.1996).

pointed out several substantial indications that arguably would lead a reader to conclude that the photographs of Messenger were those of a model and not in fact of "Mortified," the purported author of the letter,[12] the Court is not prepared on this record to say that this was the only reasonable conclusion.

■ The question whether the claim nevertheless should be dismissed because New York has abandoned the fictionalization limitation on the newsworthiness privilege is only modestly more difficult. Certainly New York courts have dismissed claims at least superficially similar to, if not as lurid as, plaintiff's. In *Arrington,* the Court of Appeals rejected a claim by a man who complained of the unauthorized use of his photograph to illustrate an article concerning the black middle class despite the fact that plaintiff allegedly did not share traits of those discussed in the article.[13] And, as noted above, it similarly disposed in *Finger* of a claim based on the use of a photograph of plaintiffs' family to illustrate an article on fertility treatments notwithstanding the fact that the children thus depicted had not been conceived by such methods.[14] ·

Defendants argue that *Finger* and *Arrington* therefore should be taken as overruling the fictionalization rule of *Spahn,* at least with regard to the use of genuine photographs reasonably related to articles concerning matters of public interest. Plaintiff, for her part, points to the fact that the New York courts never explicitly have overruled *Spahn* and its progeny. Moreover, she would distinguish the cases upon which defendants rely on the basis that none involved the use of photographs allegedly procured by deception as to their intended use.

Although it is far from clear, defendants may be correct in suggesting that there is some tension in the New York case law on this point. *Spahn* and *Fils–Aime* reflect the view that the free speech concerns that warrant broad latitude in permitting newsworthy publications free of Section 50–51 exposure are not implicated with respect to falsehoods if the publisher acts with the requisite degree of culpability. The *Finger–Arrington* line of cases, on the other hand, might be read as cutting in the other direction because there arguably was an element of falsity in the use of the plaintiffs' pictures in those cases. Moreover, plaintiff's proposed distinction of them—which depends not on the impression created by the use of the photograph in juxtaposition with the article, but on the means used to obtain the photograph—is not persuasive. If an individual's photograph has an appropriate relationship to an article concerning a matter of public interest and its use to illustrate that article does not create a false or misleading impression, the free speech concerns that gave rise to the newsworthiness exception to Sections 50 and 51 are implicated irrespective of whether the individual's photograph was obtained by inappropriate means. In other words, the individual conceivably might have an action for fraud, but does not have a claim under the Civil Rights Law. *Per contra,* if the use of the photograph culpably creates a false and misleading impression, no free speech concerns should preclude a claim under the Civil Rights Law even if no improper means were used to obtain the photograph. But while there perhaps is room for debate as to the status of New York law on this point, this Court does not write on a clean slate.

The Second Circuit in *Lerman v. Flynt Distributing Co.*[15] construed New York law as holding that the newsworthiness privilege under Sections 50 and 51 is defeated if the use of the plaintiff's name or photograph is "infected with material and substantial falsity" provided the defendant acted with the requisite degree of fault regarding the variance from the truth.[16] As *Lerman* postdates all of the cases relied upon by defendants save *Finger,* the question comes down

---

**12.** Def. Mem. 14–19.

**13.** *Arrington,* 55 N.Y.2d at 440, 449 N.Y.S.2d at 944, 434 N.E.2d 1319.

**14.** *See also Alvarado v. K–III Magazine Corp.,* 203 A.D.2d 135, 610 N.Y.S.2d 241 (1st Dept.1994).

**15.** 745 F.2d 123 (2d Cir.1984)

**16.** *Id.* at 132–33.

to whether *Finger* overruled the *Spahn–Fils–Aime* line of cases.

Defendants argue that *Finger* must have overruled *Spahn*, at least as applied in circumstances involving the use of photographs for illustrative purposes, because the plaintiff in *Finger* argued that the article falsely implied that the children had been conceived by new fertilization techniques,[17] yet the Court of Appeals, in rejecting the claim, summarized the newsworthiness exception without even referring to the issue of fictionalization. Were there no alternate explanation for the Court of Appeals' decision, the argument might be sufficiently persuasive to warrant dismissal. But that is not the case.

The Court of Appeals in *Finger* very well may have concluded, as the defendant argued,[18] that the use of the photograph in that case was not substantially fictionalized, in which case there would have been no need to address the issue of fictionalization. Or it may have accepted the defendant's contention [19] that the implication allegedly created by the use of the photograph there at issue was not offensive and therefore not actionable—unlike the implication of participation in child pornography at issue in *Fils–Aime*.

In view of the alternative explanations for the result in *Finger*, defendants' argument that *Spahn* and its progeny no longer are good law is not persuasive.[20] Certainly it is not sufficiently compelling to convince this Court that *Lerman*, a Second Circuit case closely on point, should be disregarded in favor of an uncertain projection as to the future development of New York law. Accordingly, the motion advances no sufficient basis for dismissal of the claim under Sections 50 and 51 of the New York Civil Rights Law.

■ There remains one final point. This motion was briefed and argued by both sides on the premise that the claim based on alleged commercial or trade use of Messenger's photographs is governed by New York law. Nevertheless, after the motion to dismiss was argued and a decision imminent, defendants submitted a letter suggesting that the Court "*sua sponte*" apply Florida law, rather than Sections 50 and 51, to plaintiff's claim and dismiss on the theories that Florida law exempts from liability publications on matters of public interest regardless of how fictional the use of a plaintiff's name or likeness may be or, alternatively, that the claim is barred by Florida's single cause of action rule. The argument is without merit.

■ To begin with, the Court takes exception to the timing of defendants' contention. A court need not consider an argument first advanced in a reply brief.[21] *A fortiori*, it need not consider an argument first made at an even later point. Nevertheless, it is appropriate to reach the merits here because defendants' failure to raise these issues in moving to dismiss would not preclude them from raising them at trial.[22] The issues therefore must be confronted sooner or later.

Defendants' first argument is unpersua-

---

17. Tr. 10–16; Brief for Defendant–Respondent at 30–31, *Finger v. Omni Publications Int'l, Ltd.*, 77 N.Y.2d 138, 564 N.Y.S.2d 1014, 566 N.E.2d 141 (1990); Brief of the Amici Curiae at 22–25, *id.*

18. Brief for Defendant–Respondent at 30–31, *Finger v. Omni Publications Int'l, Ltd.*, 77 N.Y.2d 138, 564 N.Y.S.2d 1014, 566 N.E.2d 141 (1990) (arguing that the photographs at issue in *Finger* were not 'substantially fictionalized' like the ones at issue in *Fils–Aime, Thompson v. Close–Up, Inc.*, 277 A.D. 848, 98 N.Y.S.2d 300, 301 (1950), and *Metzger v. Dell Publishing*, 207 Misc. 182, 136 N.Y.S.2d 888, 891 (1955)).

19. Brief for Defendant–Respondent at 30–32, *Finger*, 77 N.Y.2d 138, 564 N.Y.S.2d 1014, 566 N.E.2d 141 (labeling the *Fils–Aime* plaintiff's association with child pornography a "highly offen-

sive statement of fact" and distinguishing use of the photographs in *Finger* as not involving "offensive facts").

20. *Cf. Weber*, 1998 WL 2550, *4 (refusing to dismiss claim in view of allegations of fictionalization, albeit without discussing the argument made here).

21. *Playboy Enterprises, Inc. v. Dumas*, 960 F.Supp. 710, 720 n. 7 (S.D.N.Y.1997) (collecting cases).

22. The Court would be extremely reluctant to reach the merits in order to grant the motion on the basis of defendants' belated argument because plaintiff has not had a full opportunity to respond. This concern does not apply here in view of the Court's rejection of the contention.

sive. The Florida statute relied upon[23] is quite similar to Sections 50 and 51 of the New York statute. It differs in that it codifies the newsworthiness exception that in New York is a product of case law by specifically exempting from liability a publication that is "part of any bona fide news report or presentation having a current and legitimate public interest and where such name or likeness is not used for advertising purposes."[24] But the difference is one of form alone. Like the newsworthiness exception in New York law, this provision of the Florida statute protects against "an unconstitutional 'chilling' effect upon the First Amendment freedoms of speech and press."[25] Both therefore exist only to serve the goal of unfettered discussion of matters of legitimate public interest, not to confer a license to engage in the culpable promulgation of falsehood.[26] Thus, while no Florida court appears to have considered the issue, this Court holds that Section 540.08(3) of the Florida Statutes does not foreclose liability for culpably false or fictionalized publications, even on matters of public interest. While the Florida legislature quite appropriately has recognized the need for "breathing space" for publications on matters of public concern, its goal in doing so is fully achieved by precluding liability for innocent errors. There is no reason to suppose that it intended to immunize deliberate, reckless and irresponsible falsehood.

■ Nor does the single publication/single cause of action rule under Florida law present a barrier to plaintiff's commercial misappropriation claim. The rule is designed to prevent plaintiffs from circumventing a valid defense to defamation by recasting essentially the same facts into several different causes of action all meant to compensate for the same harm.[27] Here, however, the gravamen of plaintiff's commercial misappropriation claim goes well beyond the injury to reputation that lies at the heart of her defamation claim.[28] Consequently, the defense to plaintiff's defamation claim—her failure to provide notice before filing suit as required by Florida law—does not similarly bar her claim based on the alleged commercial or trade use of her photographs.

---

23. FLA.STAT.ANN. § 540.08 (West 1997) provides in pertinent part:

"(1) No person shall publish, print, display, or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use given by: (a) Such person; ...
(2) In the event the consent required in subsection (1) is not obtained, the person whose name, portrait, photograph, or other likeness is so used, or any person, firm, or corporation authorized by such person in writing to license the commercial use of her or his name or likeness ... may bring an action to enjoin such unauthorized publication, printing, display or other public use, and to recover damages for any loss or injury sustained by reason thereof, including an amount which would have been a reasonable royalty, and punitive or exemplary damages.
(3) The provisions of this section shall not apply to: (a) The publication, printing, display, or use of the name or likeness of any person in any newspaper, magazine, book, news broadcast or telecast, or other news medium or publication as part of any bona fide news report or presentation having a current and legit-

imate public interest and where such name or likeness is not used for advertising purposes...."

24. *Id.* § 540.08(3)(a).

25. *Loft v. Fuller*, 408 So.2d 619, 621 (Fla.App. 1981); *see also Valentine v. C.B.S., Inc.*, 698 F.2d 430, 433 (11th Cir.1983) (Florida law).

26. *See, e.g., Hustler Magazine v. Falwell*, 485 U.S. 46, 52, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988) (false statements "valueless" and actionable if made with requisite culpability); *Time, Inc. v. Hill*, 385 U.S. 374, 389–90, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967) (Constitution does not bar liability under N.Y.CIV.RIGHTS L . §§ 50–51 for culpable fictionalization).

27. *See Orlando Sports Stadium, Inc. v. Sentinel Star Co.*, 316 So.2d 607 (Fla.App.1975) (dismissing claims which were essentially alternate theories of injury to reputation).

28. *See Fridovich v. Fridovich*, 598 So.2d 65, 70 (Fla.1992) (finding single cause of action rule "will not prevent recovery upon separate causes of action which are properly pled upon the existence of independent facts").

## Conclusion

Defendants' motion, to the extent not previously disposed of, is denied.

SO ORDERED.