Jamie MESSENGER, an infant under the age of eighteen, by her mother and "next friend" Donna MESSENGER, Plaintiff–Appellee–Cross–Appellant,

v.

GRUNER + JAHR PRINTING AND PUBLISHING, also known as Gruner & Jahr USA, Defendant–Appellant–Cross–Appellee,

Sally Lee, as editor-in-chief of "YM, Young & Modern," Defendant.

Nos. 98–7767, 98–7865.

United States Court of Appeals, Second Circuit.

April 28, 1999.

Robert G. Sugarman, Weil, Gotshal & Manges, LLP, New York, NY (Jennifer Sclar, of counsel), for Defendant–Appellant–Cross–Appellee.

Mitchell A. Stein, Lieberman & Nowak, LLP, New York, NY (Arthur M. Lieberman and Stephen J. King, of counsel), for Plaintiff–Appellee–Cross–Appellant.

(Slade R. Metcalf and Trina R. Hunn, Squadron, Ellenoff, Plesent & Sheinfeld, LLP, New York, NY; Jerry S. Birenz, Victor A. Kovner, and Laura Handman, Magazine Publishers of America, Inc., New York, NY; Rene P. Milam, Newspaper Association of America, Inc., Vienna, VA; R. Bruce Rich, Weil, Gotshal & Manges, New York, NY; and Henry L. Baumann, Jack N. Goodman, and Steven A. Bookshester, National Association of Broadcasters, Washington, DC, submitted

a brief for amici curiae Magazine Publishers of America, Inc., Newspaper Association of America, Inc., The Association of American Publishers, Inc., and the National Association of Broadcasters).

Before: McLAUGHLIN, STRAUB, KEITH,* Circuit Judges.

## ORDER

Certificate to the New York Court of Appeals pursuant to Local Rule § 0.27 and New York Compilation of Codes, Rules & Regulations, title 22, § 500.17(b).

Gruner + Jahr Printing and Publishing appeals from a judgment after a jury trial in the United States District Court for the Southern District of New York (Lewis A. Kaplan, Judge) awarding damages to Jamie Messenger pursuant to New York Civil Rights Law §§ 50 and 51. Gruner + Jahr raises several issues in its appeal, and Messenger cross-appeals arguing that the District Court improperly limited her recovery. The only issue that we need reach at this stage, however, concerns the proper interpretation of §§ 50 and 51, New York's statutory right to privacy. Because that issue is important, unsettled, and dispositive of this litigation, we respectfully certify the questions formulated below to the New York Court of Appeals and retain jurisdiction so that we might dispose of the appeal after we receive the Court of Appeals' response.

## BACKGROUND

Gruner + Jahr publishes a magazine called YM, Young and Modern, which includes articles and features on beauty, fashion, and relationships, aimed at a target audience of teenage girls. In 1994 and 1995, a regular column entitled "Love Crisis" ran in YM; each column featured a letter addressed to YM's editor-in-chief, asking for advice about a "love problem."

---

* The Honorable Damon J. Keith, of the United States Court of Appeals for the Sixth Circuit, sitting by designation.

The column also contained the editor-in-chief's responses to the letters and a series of captioned photographs of a model illustrating the issues raised in the letter. The column never included the real names of the letters' authors; rather, the letters were signed with melodramatic adjectives and phrases.

Sometime in 1994 or 1995, Jamie Messenger posed for photographs to be published in YM. The parties appear to agree that, although Messenger had been booked through a modeling agency, YM did not receive adequate consent for its use of the photographs because Messenger was only fourteen-years-old at the time and because YM did not obtain consent from Messenger's parents. YM later used these photographs to illustrate the Love Crisis column in its June/July 1995 issue. The column, whose headline or "pull quote" was " 'I got trashed and had sex with three guys,' " included a letter from an author identified only as "Mortified." The author of the letter related the events described in the pull quote and sought advice from YM's editor on how to deal with the consequences. The editor responded that the author had made a "major mistake," suggested that she be tested for sexually transmitted diseases and pregnancy, and offered other advice.

In January 1997, Messenger's mother brought this action on her behalf, arguing that Gruner + Jahr violated Messenger's statutory right of privacy under New York law.** Specifically, she contends that Gruner + Jahr's use of Messenger's photograph without proper consent entitles her to recovery under the statute.

In October 1997, Gruner + Jahr moved for summary judgment, arguing that YM's use of Messenger's photographs in the

Love Crisis column fits within the broad definition of newsworthy material or material in the public interest. Because New York courts have consistently held that §§ 50 and 51 do not apply in circumstances involving newsworthy material or material in the public interest, Gruner + Jahr argued that it was entitled to judgment as a matter of law. The District Court denied the motion. See *Messenger v. Gruner + Jahr USA Publishing*, 994 F.Supp. 525 (S.D.N.Y.1998).

In its opinion, the District Court described the newsworthiness exception and noted that the topic of the column was sufficiently newsworthy to satisfy the exception's requirements. See *id.* at 529. It went on, however, to conclude that New York courts have not permitted application of the newsworthiness exception in cases where the use "is 'infected with material and substantial falsity' " or fictionalization. *Id.* at 529 (quoting *Lerman v. Flynt Distributing Co.*, 745 F.2d 123, 132–33 (2d Cir.1984), *cert. denied*, 471 U.S. 1054, 105 S.Ct. 2114, 85 L.Ed.2d 479 (1985)). Because the District Court concluded that a reasonable jury might find that "the publication created the impression that Messenger had had the experiences that were the subject of the column," *id.* at 528, the fictionalization limitation on the newsworthiness exception might apply and therefore summary judgment was not appropriate.***

The case then proceeded to trial in March 1998, at the conclusion of which a jury found in Messenger's favor, awarding her $100,000 in damages. After the trial, Gruner + Jahr moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b) or, in the alternative,

---

** Messenger's complaint also included claims of defamation, negligence, and negligent and intentional infliction of emotional distress. The District Court had, however, dismissed all claims other than the statutory privacy claim relatively early in the case's history and that decision is not at issue on this appeal. See *Messenger v. Gruner + Jahr USA Publish-*ing, 994 F.Supp. 525, 527 n. 1 (S.D.N.Y. 1998).

*** The District Court also rejected Gruner + Jahr's contention that Florida law should apply in the case. See *Messenger*, 994 F.Supp. at 530–31. Gruner + Jahr does not raise this issue on appeal.

for a new trial pursuant to Federal Rule of Civil Procedure 59. The trial court denied both in an unpublished opinion read from the bench, concluding in its decision that the jury had sufficient evidence to reach its substantive conclusions and that the court's decision on summary judgment with respect to the fictionalization exception had been proper.

Gruner + Jahr now appeals on several grounds, and Messenger cross-appeals.

## DISCUSSION

The central, dispositive issue in this appeal concerns the proper interpretation of New York Civil Rights Law §§ 50 and 51. Specifically, this case requires us to determine whether a plaintiff can recover under New York's statutory right of privacy when a publisher uses the plaintiff's image in a substantially fictionalized way to illustrate a newsworthy piece. Because we believe this important issue remains open under New York law, we certify the questions framed below to the New York Court of Appeals.

Sections 50 and 51 permit recovery when "[a] person, firm or corporation . . . uses for advertising purposes, or for the purposes of trade, the name, portrait or picture of any living person without having first obtained the written consent of such person." N.Y. Civ. Rights Law §§ 50, 51 (McKinney). There is no dispute in this case that Gruner + Jahr did not obtain adequate consent from Messenger for its use of her photographs. Likewise, the parties agree that Gruner + Jahr used Messenger's image for purposes of trade.

The New York courts, however, have long limited the broad language of the statutes by "consistently refus[ing] to construe the[ ] terms ['advertising' or 'purposes of trade'] as encompassing publications concerning newsworthy events or matters of public interest." *Finger v. Omni Publications Int'l*, 77 N.Y.2d 138, 141–42, 566 N.E.2d 141, 143, 564 N.Y.S.2d 1014, 1016 (1990). In turn, however, the

New York Court of Appeals has limited this newsworthiness exception in at least two ways, holding that the use of a name or image is not newsworthy or in the public interest if (1) the use has "no real relationship to the article," or (2) the use "is an advertisement in disguise." *Id.* at 142, 566 N.E.2d at 143, 564 N.Y.S.2d at 1016 (citations and internal quotation marks omitted).

In addition, at least some New York cases appear to have recognized a third limitation to the application of the newsworthiness exception where the use at issue is "infected with material and substantial falsification." *Spahn v. Julian Messner, Inc.*, 21 N.Y.2d 124, 127, 233 N.E.2d 840, 842, 286 N.Y.S.2d 832, 834 (1967); accord *Davis v. High Society Magazine, Inc.*, 90 A.D.2d 374, 382, 457 N.Y.S.2d 308, 315 (App.Div., 2d Dep't 1982); *Fils–Aime v. Enlightenment Press,Inc.*, 133 Misc.2d 559, 561, 507 N.Y.S.2d 947, 948 (App. Term, 1st Dep't 1986); *Quezada by DeLamota v. Daily News*, 130 Misc.2d 842, 846, 501 N.Y.S.2d 971, 975 (App.Term, 1st Dep't 1986); see also *Lerman v. Flynt Distributing Co.*, 745 F.2d 123, 132 (2d Cir.1984) (applying the substantial falsity limitation), *cert. denied*, 471 U.S. 1054, 105 S.Ct. 2114, 85 L.Ed.2d 479 (1985).

Neither party disputes that the column at issue concerns a newsworthy subject—teenage sex and its consequences—particularly in light of the broad definition of newsworthiness applied by New York courts. Cf. *Arrington v. New York Times Co.*, 55 N.Y.2d 433, 440, 434 N.E.2d 1319, 1322, 449 N.Y.S.2d 941, 944 (1982) (noting that for purposes of the newsworthiness exception, " 'public interest' [is] clearly a term to be freely defined"). In addition, Messenger concedes that the two well-established limitations to the newsworthiness exception do not apply in the instant case: The use of Messenger's photographs does bear a "real relationship" to the column, and neither the column nor the photographs themselves constitute "advertise-

ment[s] in disguise." Accordingly, the dispositive question is whether there is a third limitation—substantial fictionalization—to prevent application of the newsworthiness exception in Messenger's case. And, as explained below, we find no clear answer to this question in light of the New York Court of Appeals' 1990 decision in Finger.

Finger presented similar facts to those in the instant case: use without consent of a photograph of a family to illustrate an article about a fertilization treatment that the family had never used. See 77 N.Y.2d at 140, 566 N.E.2d at 142–43, 564 N.Y.S.2d at 1015–16. In its opinion, the Court of Appeals engaged in a thorough review of the newsworthiness exception and the exception's two established limitations without mentioning the third: fictionalization. See id. at 141–43, 566 N.E.2d at 143–44, 564 N.Y.S.2d at 1016–17. In its discussion, the Court of Appeals relied on a line of New York case law under §§ 50 and 51 that also does not mention the fictionalization limitation. See id. (citing, e.g., Arrington, 55 N.Y.2d 433, 434 N.E.2d 1319, 449 N.Y.S.2d 941; Murray v. New York Magazine Co., 27 N.Y.2d 406, 267 N.E.2d 256, 318 N.Y.S.2d 474 (1971))

Several factors suggest that Finger may have signaled the end of the fictionalization limitation. First, by itself, the language of the New York Court of Appeals indicates that there are only two limitations to the newsworthiness exception: "[Q]uestions of newsworthiness are better left to reasonable editorial judgment and discretion; judicial intervention should occur only in those instances where there is no real relationship between a photograph and an article or where the article is an advertisement in disguise." Finger, 77 N.Y.2d at 143, 566 N.E.2d at 144, 564 N.Y.S.2d at 1017 (emphasis added) (internal citations and quotation marks omitted). This lan-

guage is particularly persuasive in light of the fact that the parties in Finger had briefed the fictionalization issue to the Court of Appeals. Given that the parties squarely presented the issue to the Court, the Court's decision not to mention the argument in its discussion suggests that the fictionalization limitation may no longer exist. Finally, much of the language of the opinion in Finger emphasized the broad application of the newsworthiness exception and, by implication, the limited reach of any limitations to the exception. See, e.g., id. (noting that "the 'newsworthiness exception' should be liberally applied").

Nevertheless, the Court of Appeals did not explicitly reject the fictionalization exception. More importantly, the Court of Appeals did not overrule Spahn or the other earlier cases creating or citing to the exception. Therefore, it is at least possible, as the District Court concluded, that the Court of Appeals in Finger distinguished the case from the line of cases we identified in Lerman, rather than rejecting the fictionalization limitation entirely.**** See Messenger, 994 F.Supp. at 530 & nn. 18–19. At least one lower court in New York has interpreted the cases the same way and implicitly concluded that Finger left the fictionalization limitation intact. See Goldblatt v. Seaman, 22 Media L. Rep. (BNA) 2059, 2062, 1994 WL 581499, at *4 (N.Y.Sup.Ct. June 27, 1994); see also Weber v. Multimedia Entertainment, Inc., No. 97 Civ. 0682(PKL), 1998 WL 2550, at *3–*4 (S.D.N.Y. Jan. 5, 1998) (recognizing the fictionalization limitation).

Therefore, in light of the apparently unsettled state of the law with respect to §§ 50 and 51 after Finger and the decisive issue with which we are confronted, we turn to the New York Court of Appeals for guidance. Our Local Rule § 0.27 permits

---

**** Specifically, the District Court suggested two possible distinctions between Finger and the substantial fictionalization cases: (1) "that the use of the photograph in [Finger] was not substantially fictionalized," or (2) "that the implication allegedly created by the use of the photograph [in Finger] was not offensive and therefore not actionable." Messenger, 994 F.Supp. at 530.

us to certify to a state's highest court "an unsettled and significant question of state law that will control the outcome of the case pending before this Court."***** Likewise, title 22, § 500.17(a) of the New York Compilation of Codes, Rules & Regulations permits certification of "determinative questions of New York law ... for which there is no controlling precedent of the Court of Appeals." We respectfully believe that this appeal presents precisely such a case. As explained above, the continued existence of the fictionalization limitation is an unsettled question after Finger, and the outcome of the instant case depends upon a correct answer to that question. Moreover, we recognize that this question is simply too important to New York, with the state's long history as the hub of the publishing industry, for us merely to make an educated guess about the state of the law. This is particularly so given that similar questions have arisen in the recent past and are likely to continue to arise in the future.

Therefore, requesting guidance for ourselves and for the other courts that will face these issues in the first instance, we certify the following questions to the New York Court of Appeals:

1. May a plaintiff recover under New York Civil Rights Law §§ 50 and 51 where the defendant used the plaintiff's likeness in a substantially fictionalized way without the plaintiff's consent, even if the defendant's use of the image was in conjunction with a newsworthy column?

2. If so, are there any additional limitations on such a cause of action that might preclude the instant case?

Though certifying to the Court of Appeals the questions as framed above, we also wish to make clear that we have no desire to restrict the Court of Appeals from considering any state law issues that it might wish to resolve in connection with this appeal. Therefore, though our immediate request is for answers to the questions as framed, we would welcome any guidance the Court of Appeals might care to provide us with respect to any state law issues presented by this appeal.

***** Although neither party has made a motion to certify the question to the Court of Appeals, the rule explicitly provides that we may do so sua sponte. See Second Circuit Local Rule § 0.27.